## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| Evergreen Shipping Agency (America) Corp. and Evergreen Line Joint Service Agreement, | ) ) ) | |
| Petitioners, | ) | |
| v. | ) | 23-1052 |
| | ) | |
| Federal Maritime Commission, | ) | |
| | ) | |
| Respondent | ) | |

### Petition for Review

Evergreen Shipping Agency (America) Corp. and Evergreen Line Joint Service Agreement ("Evergreen Parties"), pursuant to 28 U.S.C. § 2342(3)(B), hereby petition the Court for review of the Order Affirming the Initial Decision issued by the Federal Maritime Commission in Docket No. 1966(I), *TCW, Inc. v. Evergreen Shipping Agency (America) Corp. & Evergreen Line Joint Service Agreement,* served on December 29, 2022 ("Order"). A copy of the Order is attached as Exhibit A. A copy of the Initial Decision is attached as Exhibit B.

Venue is proper in this Court pursuant to 28 U.S.C. § 2343.

The Evergreen Parties respectfully petition this Court for an order holding the Federal Maritime Commission's Order unlawful and vacating it on the grounds that it is arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and otherwise not in accordance with law.

Respectfully submitted,

_____
Robert K. Magovern (#50634)
Cozen O'Connor
1200 19th Street, NW
Washington, DC 20036
(202) 463-2539
rmagovern@cozen.com

*Counsel for Petitioners*

February 24, 2023

## CERTIFICATE OF SERVICE

I, Robert K. Magovern, hereby certify that the attached Petition for Review was served on the Federal Maritime Commission, Office of the Secretary, via email at secretary@fmc.gov, on February 24, 2023.

_____

Robert K. Magovern (#50634)
Cozen O'Connor
1200 19th Street, NW
Washington, DC 20036
(202) 463-2539
rmagovern@cozen.com

*Counsel for Petitioners*

# FEDERAL MARITIME COMMISSION

TCW, Inc.,

    *Claimant* ,

       v.

EVERGREEN SHIPPING AGENCY
(AM.) CORP. & EVERGREEN LINE
JOINT SERVICE AGREEMENT

    *Respondents.*

Docket No. 1966(I)

Served: December 29, 2022

---

**BY THE COMMISSION:** Daniel B. MAFFEI, Chairman,
Rebecca F. DYE, Louis E. SOLA, Max M. VEKICH,
Commissioners. Carl W. BENTZEL, *Commissioner*, dissenting.

---

### Order Affirming the Initial Decision

    On February 19, 2021, the Small Claims Officer ("SCO")
issued an Initial Decision ("I.D.") finding that Respondents
Evergreen Shipping Agency Corp.'s and Evergreen Line Joint
Service Agreement's (collectively, "Respondent") charges were
unjust and unreasonable, but that Respondent's invoicing practices
were not. Doc. 1. The SCO ordered Respondent to pay TCW
("Claimant") the requested reparations ($510) and to cease-and-

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
2

desist from imposing per diem charges when such changes do not serve their incentivizing purposes, such as when empty equipment cannot be returned on weekends, holidays, and port closures. Five days later, the Commission determined to review the SCO decision, and subsequently requested additional briefing on certain issues. The Commission received briefings from both Claimant and Respondent, as well as four amicus briefs.

Having reviewed the supplemental briefings and amicus filings, the Commission now affirms and herein adopts the initial decision of the SCO in its entirety.

# I. BACKGROUND

## A. Factual Background

On March 14, 2020, Evergreen Line Joint Service Agreement, an ocean common carrier, issued Yamaha Motor Company, Ltd. ("Yamaha"), an importer and BCO, a non-negotiable sea waybill to deliver a shipment from the Port of Shimizu, Japan to Yamaha's facility in Newnan, Georgia. Resp. Ex. 10. As part of the transportation arrangement for the shipment, Yamaha designated Claimant as its "preferred trucker" and thereby authorized Claimant to transport the shipment from the Port of Savannah to Yamaha's facility. *Id.*

Yamaha, Claimant, and Evergreen Shipping Agency, a New Jersey corporation that acts as a North American agent for Evergreen Line Joint Service Agreement, signed a Preferred Trucker Agreement ("PTA") in which Respondent agreed to the designation of Claimant as the preferred trucker for Yamaha's import and export cargoes. Resp. Ex. 9. Per the PTA, Claimant (as the motor carrier) is required to be a signatory to the Uniform Interchange and Facilities Access Agreement ("UIIA") and Evergreen Shipping Agency's individual addendum to the UIIA ("Evergreen Addendum"). *Id.* The UIIA is a contract between motor carriers and equipment providers and regulates the motor carrier's access and use of the containers and chassis. Resp. Ex. 1. The

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
3

Evergreen Addendum supplements the general provisions of the UIIA and includes details specific to Respondent regarding free time, per diem, and dispute resolution procedures. Resp. Ex. No. 4. According to the contract, the PTA's terms and conditions control in the event of a conflict. Resp. Ex. 9.

Per the shipping agreement, Yamaha, and, therefore, Claimant, were entitled to receive twenty-one days of free time for the container and four days of free time for use of the chassis. Cl. Ex. F. The free time calculation did not include weekends or holidays. Resp. Ex. 4.  Respondent would also provide Claimant a free chassis for use in transporting the Yamaha shipment. *Id.* Additionally, Claimant was required to pay per diem charges for any unreturned equipment after the expiration of the free time, including on weekends and holidays. *Id.*

On April 28, 2020, the cargo arrived at the Port of Savannah and was reterieved by Claimant. Cl. Ex. F. Per the terms of the agreements, the free time expired for the chassis on May 4, 2020, and on May 19, 2020 for the container. *Id.* Claimant  returned both on May 26, 2020. *Id.* Per the terms of the Evergreen Addendum, Respondent invoiced Claimant  for per diem charges for the equipment in the amount of $1,050 for 7 days of per diem for the container (May 19-25, 2020), and $440.00 for 22 days of per diem for the chassis (May 4-25, 2020) for a total of $1,490. *Id.*

Claimant, in turn, disputed three days of charges corresponding to when the port was closed. Respondent declined to waive the charges. Cl. Ex. G. Claimant then paid in full and later invoiced Yamaha $1788.00 for the per diem charges, which Yamaha subsequently paid.[1] Cl. Resp. to Aug. 2020 Order for Suppl. Info.

On June 18, 2020, Claimant filed this small claims action against Respondent alleging that Respondent violated 46 U.S.C. §

---

[1] Claimant up charged Yamaha $298 for the per diem charges, and invoiced Yamaha $1,260.00 for 7 days of per diem for the container and $528.00 for 22 days of per diem for the chassis. *Id.* On August 21, 2020, Yamaha paid claimant $1,788.00 for the per diem charges. *Id.* There is no dispute before the Commission between Claimant and Yamaha.

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.

4

41102 by: (1) invoicing per diem on weekends, holidays and during temporary port closures, when Claimant had no ability to return empty containers; (2) invoicing Claimant (the motor carrier) for per diem, instead of the BCO, even though the charges and free time were negotiated with the BCO; and (3) invoicing Claimant for chassis fees at a fixed rate, which is also negotiated directly with the BCO. Am. Cl. at 2. As relief, Claimant requested an order: (1) directing Respondent to reimburse it $510.00 in per diem charges; (2) forbidding Respondent from imposing per diem charges on days when a motor carrier has no ability to return equipment due to a port closure; and (3) directing Respondent and all marine lines to bill per diem charges directly to the BCO instead of the motor carrier. *Id.* at 3-4.

## B. **Procedural History**

On February 19, 2021, the SCO issued an I.D. finding that it was unjust and unreasonable under § 41102(c) for Respondent to have charged Claimant per diem when the Port of Savannah was closed. *Id.* at 32. The SCO, therefore, ordered Respondent to pay Claimant reparations, and to cease and desist from imposing per diem when equipment cannot be returned on weekends, holidays, and port closures. *Id.* at 33. The SCO denied, however, Claimant's request to order Respondent to invoice per diem to BCOs rather than Claimant. *Id.*

On February 24, 2021, a Commissioner requested review and the Secretary issued the corresponding Notice, rendering the I.D. inoperative. To aid in its review of the I.D., the Commission subsequently afforded the parties the opportunity to provide additional briefing. The Commission received briefs from both Claimant and Respondent. The Commission additionally received amicus briefs from the National Association of Waterfront Employers ("NAWE"), a trade association representing marine terminal operators ("MTOs"), the World Shipping Council, a trade organization representing ocean carriers, Ports America, Inc. and SSA Marine Terminals, LLC, major U.S. MTOs, and the American

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
5

Pyrotechnics Association, a safety and trade association for the fireworks industry.

## II. DISCUSSION

### A. Standard of Review

When the Commission reviews an SCO's Initial Decision pursuant to 46 C.F.R. § 502.304(g), it has "all the powers which it would have in making the initial decision." 46 C.F.R. § 502.227(a)(6). The Commission therefore reviews the SCO's findings de novo. *Id.; see also Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, FMC Docket No. 12-02, 2015 FMC LEXIS 43, at *110-*11 (FMC Dec. 18, 2015).

### B. The Commission has jurisdiction

Respondent raised as an affirmative defense the Commission's lack of jurisdiction. Resp. to Am. Cl. at 6. Specifically, Respondent argues that Evergreen Shipping Agency is merely an agent for Evergreen Line Joint Service Agreement and is not itself a regulated entity subject to the provisions of 46 C.F.R. § 545.5(b).

As explained in the I.D., the claim against Evergreen Shipping Agency arises "out of a common nucleus of operative facts" with the claim against Evergreen Line Joint Service Agreement, over which the Commission has jurisdiction as a VOCC. Doc. 1 at 15. Here, the principle was the VOCC for the transportation at issue and the agent imposed the disputed per diem charges in connection with a port to door transportation from Japan to Newnan, Georgia. The Commission thus has jurisdiction to adjudicate this matter.

Respondent further alleges that the Commission does not have the authority to adjudicate this action because the UIIA, the Evergreen Addendum, and the PTA are private contracts, and the "just and reasonable" requirement of § 41102(c) applies only to

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
6

"regulations and practices" not to private contracts. Evergreen Br. at 3-4. The per diem charges at issue, Respondent maintains, are not regulations or practices but merely "contractual provisions in the [PTA] that Claimant freely signed." Resp. Reply Brief at 8; *see also* Resp. Suppl. Brief at 10.

The SCO correctly concluded that the Commission can adjudicate this action. I.D. at 14-18. The Commission can adjudicate allegations that contract terms are violative of the Shipping Act. *See* Final Rule: Interpretive Rule on Demurrage and Detention, Docket No. 19-05, 85 Fed. Reg. 29638 at 29648 (May 18, 2020) ("Ocean carriers and marine terminal operators (and ocean transportation intermediaries) do not have an unbounded right to contract for whatever they want. They are limited by the prohibitions of the Shipping Act, one of which is section 41102(c)."); *see also Cargo One, Inc. v. COSCO Container Lines Company, Ltd.*, 28 S.R.R. 1635, 1645; 2000 FMC LEXIS 14, *32 (FMC 2000) (the test for the Commission's jurisdiction is whether a Claimant's allegations "also involve elements peculiar to the Shipping Act").

## C. **Respondent Charging Per Diem on Weekends, Holidays, and Temporary Closures Was Unjust and Unreasonable Under § 41102(c)**

A successful claim for reparations under §41102(c), must demonstrate five necessary elements. 46 C.F.R. § 545.4.

(1) The respondent is an ocean common carrier, marine terminal operator, or ocean transportation intermediary
(2) The claimed acts or omissions of the regulated entity are occurring on a normal, customary, and continuous basis;
(3) The practice or regulation relates to or is connected with receiving, handling, storing, or delivering property;
(4) The practice or regulation is unjust or unreasonable; and
(5) The practice or regulation is the proximate cause of the claimed loss.

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
7

 For the reasons set forth by the SCO, and reiterated below, the Commission finds that Respondent's charging of per diem over a Saturday to Monday period from May 23-25, 2020, during which the Port of Savannah was closed, was unjust and unreasonable in violation of § 41102(c) and runs contrary to the Commission's rule in 46 C.F.R. § 545.5(d).

### 1. Respondent is a regulated entity

 As explained by the SCO, and *supra*, Respondent, Evergreen Joint Service Agreement is an ocean common carrier and thus undeniably subject to the requirements of section 41102(c). Evergreen Shipping Agency imposed the per diem charges at issue on the ocean common carrier's behalf, thereby acting as its agent. The SCO ruled that because the practice at issue occurred during the through transportation of international oceanborne shipping provided by a VOCC, the Commission has jurisdiction to adjudicate whether the charges imposed by the agent during the inland portion of the through transportation, which it then passed on to the VOCC, violate the Shipping Act. Doc. 1 at 15. Further, the SCO reasoned that "the claim against Evergreen-Agent arises "out of a common nucleus of operative facts" with the claim against Evergreen-Principal, over which the Commission has jurisdiction as a VOCC." *Id.*; *see also*, *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F. 3d 1174, 1180 (9th Cir. 2004) ("A court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction"). The Commission concurs with the SCO's reasoning. Claimant thus demonstrates the first element to prove its section 41102(c) claim for reparations.

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
8

> 2.  The act occurred on a normal, customary, and
>     continuous basis

46 C.F.R. § 545.4(b) requires that the acts or omissions occur on a normal, customary, and continuous basis. The SCO concluded that the claimed acts occurred on a normal, customary, and continuous basis because of their inclusion in the Evergreen UIIA Addendum and because Respondent specifically states in its brief, "Respondent's only intent is to bill per diem allowed by the PTA that Claimant agreed to, which includes the PTA's requirement to be a signatory to the UIIA addendum which mandates the alleged unreasonable conduct." Resp. Reply Brief at 2. The SCO concluded that the evidence thus establishes that imposition of the disputed per diem charged by Respondents is "occurring on a normal, customary, and continuous" basis and is a part of Respondents' normal business practices. Doc. 1 at 22.

In their supplemental briefing, Respondent argues Claimant has only one factual showing of the alleged act and instead relies on the UIIA addendum and Respondent's admission to establish this element. Respondent argues that the requirement in section 545.4 is that the act or omissions "are occurring" on a normal customary and continuous basis not merely "possible" or "contemplated." Doc. 3 at 4. NAWE presents a similar argument in its amicus brief, stating, "the fact that ports are normally closed on weekends, and that the UIIA Addendum permits charging demurrage after free time, does not constitute evidence that Respondents' charge demurrage on a normal, customary, and continuous basis in all situations when a port is closed." Doc. 5 at 5.

First, NAWE's argument is not based in the language of the UIIA addendum. The addendum does not "permit charging." The addendum states, "[t]he Motor Carrier shall pay…". Resp. Ex. 4 at 4. This is not a situation where carriers have the option to charge if they choose, instead the language of the addendum mandates when the trucker must pay per diem. Further the addendum does not only discuss charging demurrage after free time, it also specifically says it will be charged on days when the port is closed. Thus, a more accurate representation of the content of the UIIA addendum is that

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
9

it mandates the payment of per diem on days when the port is closed and in doing so establishes that this practice is occurring a normal, customary, and continuous basis.

Thus, the SCO properly found that the evidence establishes that imposition of the disputed per diem charged by Respondents is occurring on a normal, customary, and continuous basis. Accordingly, this element has also been demonstrated.

Although not determinative in this analysis, the Commission notes that in this case, the Respondent, in its brief, admits that this is the policy to which it will adhere, further supporting the SCO decision. Resp. Reply Brief at 2.

### 3. Respondent Charging Per Diem on Weekends, Holidays, and Temporary Closures Was Unreasonable

To find a violation, 46 C.F.R. § 545.4(d) requires that the practice be unjust and unreasonable. In § 545.5 the Commission further explains how it will assess the reasonableness of demurrage and detention charges and states that in general the Commission will consider the extent to which they are serving their intended primary incentivizing purpose. 46 C.F.R. § 545.5(c)(1). Additionally, the interpretive rule provides specific clarity with respect to the return of empty containers: "[a]bsent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, are likely to be found unreasonable." *Id*. § 545.5(c)(2)(ii).

As explained in the I.D., during the rulemaking the Commission was clear that no amount of detention can incentivize the return of a container when the terminal cannot accept the container. Doc. 1 at 25; *see also* 85 Fed. Reg. 29638, 29655. In this case there was nothing Claimant could have done to return the container between May 23-25, 2020 because the port was not receiving empty containers. The SCO correctly found that the per diem charges were unreasonable because "they could not have incentivized cargo movement given that the port was closed on those

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
10

days, making it impossible for Claimant to return the equipment." Doc. 1 at 26.

The Commission also rejects the argument raised in amicus filings that not charging during the May 23-25, 2020 closure would have disincentivized the return of the container before the closure. *See* Doc 7 at 15, Doc. 9 at 3. These arguments were previously raised and similarly dismissed during the rulemaking process. 85 Fed. Reg. at 29652. First this disincentivizing argument neglects the commercial incentives to returning empty containers and one could easily argue the contrary position, namely that the ability to collect per diem, even if it is impossible for a truck to return equipment might disincentivize ocean carriers and marine terminal operators from acting efficiently. *Id*. at 29653.

Respondent, NAWE, and WSC also claim that the SCO failed to consider 46 C.F.R. § 545.5(f). Section 545.5(f) states that nothing precludes the Commission "from considering factors, arguments, and evidence in addition to those specifically listed in this rule." 46 C.F.R. § 545.5(f). The "other factor" most frequently cited by the amicus briefs and Respondent is the fact that Claimant could have returned the container prior to the May 23-25, 2020 closure and that the container was already in per diem when the closures took place. Doc. 4 at 5-7, Doc. 6 at 9-11, Doc. 7 at 10 ("[i]f the party responsible for returning the equipment on time (i.e., either the shipper or trucker) can avoid the charge by taking some action prior to the expiration of allotted free time, the charge will be considered reasonable.").

This notion was discussed at length during the rulemaking process and is frequently referred to as "once-in-demurrage, always-in-demurrage." Under this principle, the shipper bears the risk of anything after free time has ended. As discussed in the rule, "once free time ends, it would not be unreasonable to impose demurrage on a shipper even if the shipper is unable to retrieve the container due to circumstances outside the shippers, or anyone's, control." 85 Fed. Reg. at 29652.

The SCO correctly addressed and dismissed these arguments during in the I.D. Doc. 1 at 27. During the rulemaking process the Commission received comments from ocean carriers and marine

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
11

terminal operators urging the Commission to reaffirm the principle
of "once-in-demurrage, always-in-demurrage." 85 Fed. Reg. at
29652. Conversely other commenters requested that the
Commission expressly overrule the "once-in-demurrage, always-in-
demurrage" principle. The Commission did neither, stating that it
"does not agree with some commenters' arguments that it is always
a reasonable practice to charge detention and demurrage after free
time regardless of cargo availability or the ability to return
equipment." *Id.* at 29653.

Just because a container is in a state of per diem, it does not
automatically mean that charges can continue to accrue regardless
of circumstance. Rather, the interpretive rule continues to apply, and
the practice must be evaluated under that lens. In this case, for the
reasons discussed in the I.D., such an evaluation leads the
Commission to conclude that the charging of per diem on this
container during the May 23-25, 2020 closure when it was not
possible to return the container was unjust and unreasonable under
§ 41102(c).

4. The practice or regulation relates to or is
connected with receiving, handling, storing, or
delivering property;

46 C.F.R. § 545.4(c) requires that the practice relates to or is
connected with receiving, handling, storing, or delivering property.
As discussed in the I.D., the parties do not dispute that the per diem
charges at issue relate to or are connected with receiving, handling,
storing, or delivering property. Doc. 1 at 22. Respondent,
nevertheless, raised an argument, that because the Claimant is a
motor carrier the claim was outside Commission jurisdiction. *Id.*
The SCO dismissed this argument, stating that during the
rulemaking process the Commission made clear that truckers were
one of the entities meant to be protected under § 41102(c). *Id.* The
SCO ultimately concluded that the requirements of § 545.4(c) were
established. *Id.* The Commission concurs with the SCO's
conclusion.

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
12

5.  Respondent's Practice is the Proximate Cause Of
The Claimed Loss

46 C.F.R. § 545.4(e) requires that the practice be the proximate cause of the loss. Respondent argues that Claimant was not injured, or that the per diem did not proximately cause any injury, because Claimant passed on the per diem with markup to Yamaha. Doc. 4 at 13-14, Doc. 5 at 11-12 (similar arguments were raised by NAWE). The SCO rejected that argument as a defense to liability under § 41102(c), but nevertheless ordered Claimant to return the per diem with markup to Yamaha so that Claimant did not receive a double recovery – i.e., reparations plus retention of the per diem/markup it received from the BCO. Doc. 1 at 29.

*In re Vehicle Carrier Services*, 1 F.M.C.2d 440, 446 (FMC 2019) the Commission stated that a respondent cannot rely on a claimant pass-on theory to avoid liability for reparations. This is a corollary to the direct purchaser rule in overcharge cases. Under the direct purchaser rule, only the party who actually paid the carrier can sue for reparations for an overcharge, not indirect purchasers further down the chain. *Id.* By the same token, a respondent cannot rely on the fact that a claimant passed on charges as a defense to an overcharge claim. *Id.*

Under the direct purchaser rule, "parties suing for alleged overcharges can only recover reparations if they actually paid the carrier or received an assignment from the direct purchaser." *Gov't. of Guam v. Sea-Land Serv., Inc.*, 29 S.R.R. 894, 902, 2002 FMC LEXIS 16, *4 (ALJ 2002), *admin. final*, 2002 FMC LEXIS 25 (FMC 2002). As explained in the recent Commission case, *In Re Vehicle Carrier Services*, "[t]he basis for this rule first arose in 1934, when the Commission's predecessor, the United States Shipping Board Bureau, held that the entity that paid the illegal overcharges was the person 'directly damaged' by the illegal rates and '[h]is claim accrued at once' and the law 'does not inquire into later events.'" *See In Re Vehicle Carrier Services*, 1 F.M.C.2d 440, 445 (2019) (citations omitted). The Commission continued, "In the 80 years since the Shipping Board held that a respondent could not rely on a pass-on theory to avoid liability to a Claimant for reparations,

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
13

the Commission has repeatedly found that a Claimant cannot rely on a pass-on theory to recover reparations for overcharges. In numerous decisions, the Commission has ruled that only the party who actually paid the carrier (or the valid assignee of the payor) can sue for reparations." *Id.* at 446.

The Commission's rule is consistent with the Supreme Court's direct purchaser rule developed in *Illinois Brick v. Illinois,* 431 U.S. 720 (1977). There, the Supreme Court explained that this rule was necessary to avoid the complex task of accurately apportioning damages among various parties along the distribution chain. *Id.* at 730-37. The Court recognized that "these difficulties and uncertainties will be less substantial in some contexts than in others," but chose not to carve out exceptions. *Id.* at 743-44.

In the instant matter there is no question that Respondent was paid by the Claimant. Thus, under the Commission's Direct Purchaser Rule, the Claimant has the ability to collect damages and Respondent cannot avoid responsibility by claiming Claimant was later reimbursed.

## D. **Claimant's Requested Relief**

In addition to finding that Respondent's actions in this case were unreasonable and ordering reparations, the SCO also ordered Respondent to, "cease-and-desist from imposing per diem charges when imposition of per diem charges does not serve its incentivizing purposes, such as when empty equipment cannot be returned on weekends, holidays, and port closures." Doc. 1 at 33. This injunctive language mirrors 46 C.F.R. § 545.5(c)(2)(ii): "Absent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, are likely to be found unreasonable."

The SCO correctly determined that it was appropriate to issue a cease-and-desist order. Doc. 1 at 29-30. Respondents were found to have violated section 41102(c). *Id.* at 20. Under Commission precedent, a cease-and-desist order may be issued where there is a violation of the Shipping Act. *See, e.g.*, *Bimsha Int'l*

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
14

*v. Chief Cargo Svcs. Inc*., 32 S.R.R. 1861, 1864, 2013 FMC LEXIS 32 at \*22-\*23 (FMC 2013).

The order followed Commission precedent regarding the language used in cease-and-desist orders. *See Universal Logistic Forwarding Co. Ltd.,-- Possible Violations of Section 10(a)(1) and 10(b)(1) of the Shipping Act of 1984*, 29 SRR 474, 476 (FMC 2002)(The Commission advised "the language used in cease-and-desist orders generally mirrors the violations committed coupled with the statutory language").

The Commission has issued a variety of cease-and-desist orders, some warranting broader language, some more specific language. *See, e.g.*, *United Logistics (lax) Inc. - Possible Violations of Sections 10(a)(1) and 10(b)(2)(a) of the Shipping Act of 1984*, 2014 WL 5316339 (FMC 2014) (Respondent ordered to cease and desist from operating as an OTI without a license); *Saeid B. Maralan, et. al. - Possible Violations of Sections 8(a)(1), 10(b)(1), 19(a) and 23(a) of the Shipping Act of 1984*, 1999 WL 1294893 (FMC 1999) (Respondent ordered to cease and desist from charging rates other than those filed in tariffs); *but see*, *Commonwealth Shipping Ltd., Cargo Carriers Ltd., Martyn C. Merritt And Mary Anne Merritt - Submission Of Materially False Or Misleading Statements to the Federal Maritime Commission and false representation of Common Carrier Vessel Operations* 2003 WL 21371703 (FMC 2003) (Respondent ordered to "cease and desist from committing any further violations of the Shipping Act.").

The Commission has also issued cease-and-desist orders to advance compliance more broadly. In *Alex Parsinia d/b/a Pacific Int'l Shipping and Cargo Express*, 27 S.R.R. 1335, 1342, 1997 FMC LEXIS 46, \*26 (ALJ 1997), the Respondent was not currently engaged in transportation activities, nevertheless, a cease-and-desist order was still deemed appropriate to "alert the shipping industry, serve to forestall future violations, and facilitate injunctions against possible future unlawful activity." *See also Geo Machinery FZE v. Watercraft Mix, Inc*, 32 S.R.R. 1673, 1677 (SCO May 21, 2013), *aff'd*, 33 S.R.R. 329 (FMC 2014) (Order Affirming Settlement Officer's Decision) (the small claims officer issued a cease-and-desist order to "alert the shipping industry, serve to forestall future

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
15

violations, and facilitate injunctions against possible future unlawful activity."); *Stallion Cargo, Inc. Possible violations of Section 10(a)(1) and 10(b)(1) of the Shipping Act of 1984*, 29 S.R.R. 205, 218 (ALJ 2001) (despite no evidence that Respondent had continued to violate the Shipping Act, cessation of unlawful practices, and argument that it had taken measures to prevent future violations, a cease and desist order was still appropriate because the Respondent intended to stay in business, and had previously persisted in committing numerous violations.).

The Commission has previously expressed that "cease-and-desist orders are usually issued when there is a reasonable expectation that respondents will continue or resume illegal activities." *See Alex Parsinia d/b/a Pacific Int'l Shipping and Cargo Express*, 27 S.R.R. 1335 at 1342-1343. Evergreen acknowledged in its filings that it intended to continue charging while the port was closed. Resp. Reply Brief at 2.

Finally, for the reasons discussed in the I.D., the Commission also denies Claimants request that Respondents and "all marine lines" be directed to bill per diem charges directly to their customers. Amended Cl. Pg. 2. First, as noted by the SCO, judgments issued in this decision can only apply to Respondent because Claimant did not include any other marine line as a respondent in this proceeding. Doc. 1 at 31. Further, the fact that Claimant agreed to be billed for the per diem charges and appears to have profited from the billing arrangement, does not support its argument that the billing arrangement poses a hardship and a burden to it. *Id*. at 32.

## III.  CONCLUSION

For the reasons explained in the I.D. and reiterated above, the Commission finds that Claimant has met its burden of proof in demonstrating that Respondent's actions were unjust and unreasonable under § 41102(c), as interpreted following 46 C.F.R. § 545.5.

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
16

Accordingly, the Commission **AFFIRMS** the Initial Decision. It is hereby **ORDERED** that Respondent shall pay reparations to Claimant by January 13, 2023, in the amount of $510.00 with interest ($11.62) running on the reparation award from June 6, 2020, totaling $521.62.

**FURTHER ORDERED**, that absent extenuating circumstances Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement cease and desist from imposing per diem charges when imposition of per diem charges does not serve its incentivizing purposes, such as when empty equipment cannot be returned on weekends, holidays, and port closures. It is

**FURTHER ORDERED**, that TCW Inc.'s request for an order requiring Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement to invoice per diem directly to beneficial cargo owners is **DENIED**.

By the Commission.

William Cody
Secretary

*Commissioner* Bentzel, dissenting:

I disagree with the SCO's finding that Evergreen's conduct was unjust or unreasonable under § 41102(c). Accordingly, I disagree with the above Order and recommend that the Commission affirm the SCO's decision with respect to the issues of invoicing TCW instead of the BCO and reverse the SCO's decision with respect to the per diem charges.

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
17

## I.  **LEGAL STANDARDS**

The Commission reviews an I.D. de novo. 46 C.F.R. § 502.227(a)(6) (when the Commission reviews an I.D., it has "all the powers which it would have in making the initial decision"). 46 U.S.C. § 41102(c) prohibits common carriers, marine terminal operators, and ocean transportation intermediaries from failing to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property. 46 C.F.R. § 545.4 further requires § 41102(c) claimants seeking reparations to prove that the claimed acts or omissions of the regulated entity are occurring on a normal, customary, and continuous basis, and that the complained-of practice or regulation is the proximate cause of the claimed loss. 46 C.F.R. § 545.5 informs § 41102(c) claimants (and others) that in assessing the reasonableness of any charges, including "per diem," assessed by regulated entities on containerized cargo, the Commission "will consider the extent to which demurrage and detention are serving their intended primary purpose as financial incentives to promote freight fluidity" (the "incentive principle"). 46 C.F.R. § 545.5(c)(1).

It is my view that terms such as "incentive principle" do not replace "reasonableness" which is the underpinning of the Shipping Act.  In this case, my concern is that we are at risk of overstating the manufactured principle at the peril of usurping reasonableness. Further, it is my view that the Respondents, Evergreen Shipping, charged detention consistent with the "incentive principle" and the need to promote fluidity of movement.

Specifically, in this case, the container and chassis were already exceeding limits of free time before implementation of the per diem penalties and the claimants well apprised of and cognizant of the standards for implementation of per diem detention penalties. In this case it is clear to me that the claimants knew when the Port of Savannah was open to business, and when they were supposed to re-deliver cargo equipment; there were no issues that were beyond

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
18

or outside of the control of the shipper justifying the denial of detention penalties. In essence, the shipper knew when the facility was closed and failed to timely re-deliver it before the stipulated time.

## II. __INTERPRETIVE RULE__

Unfortunately, the industry has been forced to rely on a series of *ad hoc* determinations and general guidance that neither affirms proper context for enforcing an adequate process in which detention and demurrage charges can be assessed nor outlines the improper implementation of penalties aimed at increasing cargo fluidity in movement. Compounding the challenge of establishing the reasonableness of shipping practices, is the challenge of defining "reasonableness."

While I generally agree with the proposition that detention and demurrage for circumstances outside of the shipper's control, in instances where a shipper/trucker is unaware of unscheduled or unannounced policy changes that are made to provide access for the pick-up or return of containers or intermodal equipment, I do not believe that the incentive principle should be construed to provide an interpretation that prohibits the assessment of penalties for days that a terminal is closed for business, or on holiday.

Penalty charges for detention and demurrage are intended to facilitate the movement of cargo from the port complex and the re-delivery of intermodal cargo equipment back to the port complex. As such there should be a balance of expectation in performance. The carrier/terminal operator should provide a reasonable amount of free time before imposition of the demurrage penalty, and a reasonable period for the re-delivery of intermodal cargo equipment. The primary mechanism driving the incentive principle is not that we intend to immunize shippers for charges when terminal factifies are closed, but rather that we have clear communications on the expectation of pick-up of cargo and re-delivery of intermodal cargo equipment. The incentive is the notification of operating

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
19

requirements governing access into and out of the complex, and deadlines for performance on both ends. The shipper must be aware of and prepared to pick up cargo and return equipment within the required free time or pay penalties for the delay.

The majority opinion in my view is overly concerned with the methodology of assessing detention and demurrage, rather than focusing on whether in this instance it reasonably achieved the objective of providing fluidity of movement of cargo. The terms of detention and demurrage are set by the ocean carriers by contract, or in some instances by their tariff, and marine terminals set detention and demurrage requirements by the terms of publicly available schedules. They make their own decisions on what is necessary and appropriate in the implementation of potential penalties. As such, they could choose to define detention and demurrage differently: either to define operations days to include days off and holidays or to shorten or expand the duration of detention and demurrage to reflect the time frame they seek to have covered. Effectively, this decision will have no value governing whether carriers or terminals alter policies on billing detention and demurrage because they are authorized to define the terms for the imposition of the penalty.

Reviewing the facts in this particular case, and not focusing on whether their assessment methodology included assessments for a day off each week and a holiday, claimant had 21 days of total free time. An amount of time that, even excluding the days off, seems to be a more than a reasonable amount of time to make a port run, and return intermodal cargo equipment to the terminal. Instead of returning the equipment three weeks, two weeks or even one week ahead of time, before falling into demurrage, the equipment was held on to and effectively taken out of the supply chain. When the claimant did decide to return the equipment, it was on a holiday weekend. The Port of Savannah was closed the Monday of Memorial Day and it was also closed on Saturdays during the COVID crisis. The Port of Savanah confirmed that the port was in fact closed on Saturdays from mid-March 2020 to mid-June 2020, but these closures were communicated widely, and in my view the

TCW v. EVERGREEN SHIPPING AGENCY (AM) CORP.
20

claimants were well positioned to know when they could pick-up cargo and return intermodal cargo equipment.

For example, a month before a Saturday closure, the Port's email system routinely notifies 1,400 trucking companies and the Port's Everbridge text system reaches over 8,000 truck drivers who are alerted of operational closures or changes in schedule. In practice, the shipper would have received communication on the port's operation schedule throughout the 21 days of free time.

What makes the legal claim contesting assessment of detention about the port being closed on the weekend and holidays even more concerning is that it was a time when port and supply chain operations were widely acknowledged as suffering as a result well known operational disruptions throughout the supply chain. Throughout the system there were carriers waiting outside ports to berth, congestion at terminals, equipment dislocation for chassis and empty containers. Anyone moving cargo should and would have been on high alert.

In the absence, of information on *ad hoc* closures restricting access to the Port of Savannah, I believe the provision of 21 days of total free time for pick-up of cargo and re-delivery of intermodal cargo equipment was a reasonable time allotment even with reductions due to Saturday closures and the Memorial Day holiday, and I believe that the claimants were provided more than adequate notification of the operational policies restricting access to the terminal. Accordingly, I disagree with the SCO's finding that Evergreen's conduct was unjust or unreasonable under § 41102(c). Also, I disagree with the above Order and recommend that the Commission affirm the SCO's decision with respect to the issues of invoicing TCW instead of the BCO and reverse the SCO's decision with respect to the per diem charges.

# FEDERAL MARITIME COMMISSION
## Office of the Administrative Law Judges

| | |
|---|---|
| TCW, INC., *Claimant*<br><br>v.<br><br>EVERGREEN SHIPPING AGENCY (AMERICA) CORPORATION,<br>& EVERGREEN LINE JOINT SERVICE AGREEMENT,<br>*Respondents*. | **DOCKET NO. 1966(I)** |

Served: February 19, 2021

**BEFORE**:  Theresa DIKE, *Small Claims Officer*.

### INITIAL DECISION[1]

## I.    INTRODUCTION

Claimant TCW, Inc. ("TCW") initiated this proceeding by filing a complaint against Respondents Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement (collectively "Evergreen"). Claimant alleges that Respondents overcharged it for per diem by $510.00, in connection with an inland delivery by TCW which was part of a through transportation provided by Evergreen Line Joint Service Agreement ("Evergreen-Principal") to Yamaha Motor Company, Ltd. ("Yamaha" ) from Japan to the United States. The per diem at issue was imposed by Evergreen-Principal's agent, Respondent Evergreen Shipping Agency (America) ("Evergreen-Agent"). TCW asserts that Respondents' imposition of the disputed per diem constitutes a violation of 46 U.S.C. § 41102(c) of the Shipping Act and runs contrary to the guidance set forth at 46 C.F.R. § 545.4(d) of the Commission's regulations.

### A.    Background

Evergreen-Principal and Yamaha entered into an agreement to deliver Yamaha's shipment from Japan to Yamaha's facility in Newnan, Georgia. On March 14, 2020, Evergreen-Principal issued Yahama a non-negotiable sea waybill reflecting the port of loading as the Port of Shimizu, Japan and the place of delivery as Newnan, Georgia. Answer Exh. 10 (Evergreen-Principal Sea Waybill). As part of the through transportation arrangement for the shipment, Yamaha designated Claimant as its preferred trucker for transporting the shipment from the Port of Savannah to Yamaha's facility in Newnan, Georgia. As an additional part of that arrangement, Yamaha, TCW, and Evergreen-Agent, "as agent for Evergreen[-Principal]," signed a "Preferred

---

[1] Pursuant to 46 C.F.R. § 502.304(g), this decision will become final unless the Commission elects to review it within 30 days of service.

Trucker Agreement" in which, among other terms in the contract, Respondents agreed to the designation of TCW as the preferred trucker for Yamaha's import and export cargoes. Resp. Exh. 9 (Preferred Trucker Agreement).

The Preferred Trucker Agreement incorporates the terms of a service contract between Evergreen-Principal and Yamaha, the terms of Evergreen Principal's non-negotiable sea waybill for the transportation, and Evergreen-Principal's tariff, but notes that the terms and conditions of the Preferred Trucker Agreement control in the event of a conflict. Exh. 9 at 2. "As a condition precedent to being authorized" as the preferred trucker, the Preferred Trucker Agreement requires TCW to be a signatory to the Uniform Interchange and Facilities Access Agreement ("UIIA") and Evergreen Line's individual addendum to the UIIA ("Evergreen Addendum"). Respondents Exh. 9 at 1; Answer Pg. 4. The UIIA is "a contract between the industry's Motor Carriers on the one hand, and industry's Equipment Providers . . . on the other hand [which] regulates Motor Carriers' access to and use of the Providers' containers and chassis, in the land transportation of cargo." Answer at 4. The Evergreen Addendum "supplements the industrywide, general provisions of the UIIA by including details such as free time and per diem rates that are specific to respondent's business." Answer Pg. 4.

As part of the parties' arrangement, Evergreen provided a free chassis to TCW for use in transporting the Yamaha shipment but TCW was required to pay per diem charges for any unreturned equipment after expiration of the free time granted by Evergreen for the equipment, including on weekends and holidays. Amended Cl. Pg. 2[2] at III. However, while Evergreen provides a free chassis to its preferred truckers, TCW was not obligated to use the provided chassis and could have used a different chassis of its choosing. Answer Pg. 4 - 5; Resp. Exs. 1 and 4. Under the transportation agreement Yamaha was entitled to receive 21 days of free time for the container and four days of free time for use of the chassis. Amended Cl. Exh. F (Evergreen-Agency Per Diem Invoice); Answer to Amended Cl. at 17.

TCW picked up the equipment in question on April 28, 2020, and by the time it returned them on May 26, 2020, their allotted free time had expired (May 19, 2020, for the container and May 4, 2020, for the chassis). Cl., Exh. F. Evergreen-Agent then invoiced TCW for per diem charges for the equipment in the amount of $1,050 for 7 days of per diem for the container and $440.00 for 22 days of per diem for the chassis. Amended Cl. Pg. 2-3 at IV; Amended Complaint Exh. F; Answer to Amended Cl. Pg. 17.

TCW disputed the charges on the basis that it should not have been charged per diem from May 23, 2020, to May 26, 2020, totaling $510.00, because the Port of Savannah was closed on those days, making TCW unable to return the equipment to the port, but Respondents declined to waive the charges. Amended Cl. Pg. 2 – 3 at VI. TCW then filed this complaint with the Commission seeking reparations for the $510.00 per diem charges, and an order directing Respondents not to impose per diem charges on days when a motor carrier has no ability to return equipment due to a port closure, and to bill per diem charges directly to the BCO rather than invoicing the motor carrier.

---

[2] The pages in all documents without a page number that are cited in this decision are numbered sequentially from the first page of that document to its last page.

As discussed in greater detail below, I find that the evidence supports Claimant's allegation that by imposing the per diem charges for the days the equipment could not be returned, Respondents violated section 41102(c).

## B.    Procedural History

On June 18, 2020, the Secretary of the Federal Maritime Commission ("FMC" or "Commission") issued a Notice of Filing of Small Claims Complaint and Assignment ("Notice"), noting that Complainant TCW had commenced this proceeding against Respondent Evergreen Shipping Agency (America) Corporation ("Evergreen-Agent").[3] In the Notice, Evergreen-Agent was instructed to file its response to the complaint by July 13, 2020, and to indicate whether it consented to the use of the Commission's informal procedures set forth at Subpart S for adjudication of the complaint. On July 9, 2020, Evergreen-Agent filed a response to the complaint and stated that it consented to the use of the informal procedures.

Pursuant to 46 C.F.R. § 502.301(a) and (e), which authorize the Small Claims Officer ("SCO") in a Subpart S proceeding, to, if deemed necessary, request additional documents or information from the parties, on July 21, 2020, an order was issued directing TCW and Evergreen-Agent to submit any discovery requests that would aid them in establishing their claims and defenses. Order to Submit Discovery Requests, July 21, 2020 ("Order for Discovery Requests"). The Order for Discovery Requests further stated:

> Any party objecting to a discovery request submitted to the undersigned by another party may file an objection to the request, stating why the required income information cannot be disclosed. The requesting party will then be provided 14 days to explain to the undersigned why the information sought is relevant to this proceeding and why it cannot be obtained in some other manner.
>
> Upon receiving the discovery requests and any objections thereto, the undersigned will review the submissions and issue an order for supplemental information to the parties, incorporating the information requested by the parties determined to be appropriate and any additional information deemed to be helpful to the proper adjudication of this proceeding.

Order for Discovery Requests at 2.

On August 5, 2020, Respondent Evergreen-Agent submitted its discovery requests. On August 10, 2020, Claimant TCW submitted objections to Evergreen-Agent's discovery requests, asserting that the requests objected to were either irrelevant or unduly burdenson.[4] On August 11, 2020, Evergreen Shipping was directed to explain why the discovery sought was relevant and could not be obtained elsewhere. For its part, TCW did not submit any discovery requests but

---

[3] As explained below in greater detail, TCW initially filed this complaint against Evegreen-Agent but later amended its complaint to add Evergreen-Principal as a respondent.

[4] In the interest of brevity, the Order to Submit Discovery Requests, the parties' responses, and the Order for Supplemental Information are summarized.

instead, submitted on August 20, 2020, a brief arguing the merits of its case. On August 21, 2020, Evergreen-Agent submitted an objection to TCW's brief and an explanation supporting its discovery requests. In the event that the brief was allowed in the record, Evergreen-Agent asked that it be permitted to respond to the brief. On August 28, 2020, an order was issued directing the parties to provide additional information and documents. The order incorporated some of Evergreen-Agent's's discovery requests but denied the remainder for lack of relevance. Order to Submit Supplemental Information ("Order for Supplemental Information"), August 28, 2020. The Order for Supplemental Information also permitted Evergreen-Agent to respond to TCW's brief.

Further, because Evergreen-Agent had stated in its answer that it was an agent for Evergreen-Principal, the order required Claimant to state whether it wished to amend its complaint to add Evergreen-Principal as a respondent. Order for Supplemental Information at 5. On September 21, 2020, Claimant submitted a request to amend its complaint to add Evergreen-Principal as a respondent, and attached a copy of the amended complaint. Email from TCW with Attached Amended Complaint, dated September 21, 2020. Claimant's request was granted the same day.

On September 25, 2020, Evergreen-Agent submitted a response to the Order for Supplemental Information titled "Respondents' Response to the S.C.O.'s Questions [Order dated August 28, 2020], and a Request to Dismiss the Amended Informal Complaint as to Both Respondents Based on Claimant's Discovery Production" ("Request for Dismissal"). Evergreen-Agent argued in the Request for Dismissal that the complaint against it and its principal should be dismissed because, according to Evergreen-Agent, TCW had suffered no monetary damages since the evidence showed that it had been reimbursed by Yamaha for the disputed per diem charges. Request for Dismissal at 1-4. In addition, Evergreen-Agent argued that the remainder of TCW's claims are not in the nature of reparations and therefore, could not be granted by a small claims officer. Request for Dismissal at 1, 5.

On September 30, 2020, the Secretary of the Commission served the amended complaint on Respondents. Evergreen-Principal was directed to respond to the complaint within 25 days in accordance with the Commission's Rules. On October 8, 2020, Evergreen-Principal consented to the use of the Subpart S informal procedures and, appearing through counsel, requested that it be allowed to mount a common defense with Evergreen-Agent and to join in Evergreen-Agent's request to dismiss the amended complaint. Should its response to the amended complaint be required, Evergreen-Principal asked that an extension of time be granted to it to file its response.

On October 15, 2020, Respondents' Request for Dismissal was denied. Order Denying Respondents' Request for Dismissal and Granting Additional Time to Evergreen Line to Respond to the Amended Complaint ("Order Denying Dismissal"), October 15, 2020. The Order Denying Dismissal stated *inter alia*:

Commission's regulations do not limit small claims officers to awarding only monetary judgments. Indeed, small claims officers have issued non-monetary judgments in the past, including cease and desist orders against respondents found to have violated the Shipping Act. As an example, in *GEO Machinery*, the small

4

claims officer ordered the respondent to release the title of a boat to the claimant and noted that a "cease and desist order may be issued when there is a violation of the Shipping Act." *Geo Machinery FZE v. Watercraft Mix, Inc.* Docket No. 1935(I), Initial Decision at 6 (SCO May 21, 2013) (internal citations omitted), aff'd, 33 S.R.R. 329 (FMC 2014) (Order Affirming Settlement Officer's Decisions). The small claims officer further stated: "I am issuing this order to 'alert the shipping industry, serve to forestall future violations, and facilitate injunctions against possible future unlawful activity.'" *GEO Machinery,* Initial Decision at 7.

The amount claimed as damages and the conduct alleged to violate the Shipping Act fall within the jurisdictional purview of a small claims proceeding. Thus, dismissal of the proceeding at this early stage before adjudicating all allegations raised in Claimant's complaint would not be appropriate. Further adjudication will help to resolve the issues in dispute and to determine the appropriate course of action with regard to Claimant's allegations and the relief requested.

Order Denying Dismissal at 2. Evergreen-Principal was granted until October 30, 2020, to file its response and permitted to mount a common defense with Evergreen-Agent, as well as to adopt Evergreen-Agent's responses and submissions. Order Denying Dismissal at 3.

On October 30, 2020, Respondents filed their response to the amended complaint. In addition, Respondents submitted a second request for discovery. On November 3, 2020, Claimant submitted objections to Respondents' second request for discovery. On November 15, 2020, Respondents submitted a reply to TCW's objections. On December 3, 2020, an order was issued, denying Respondents second discovery requests. Order on Respondents' Second Request for Discovery and to Submit Briefs ("Order Denying Second Discovery Request"), November 15, 2020. The Order Denying Section Discovery Request stated:

The intention behind the Subpart S informal procedures is to facilitate the adjudication of claims "without the necessity of formal proceedings." 46 C.F.R. § 502.301(b). To this end, the Commission's Rules guiding discovery in formal proceedings are not made applicable to small claims proceedings. Rather, the small claims officer is given the authority to, "if deemed necessary, request additional documents or information" from the parties in a proceeding. 46 C.F.R. § 502.304(a) and (e). Although Respondents' first discovery requests, which were similarly crafted, were accepted because they were submitted in compliance with the small claims officer ("SCO")'s July 21, 2020, order to submit discovery requests and were incorporated into the SCO's August 28, 2020, order for supplemental information, Respondents second discovery requests were not requested by the SCO. The second discovery requests are akin to the discovery procedures utilized in formal proceedings and are not contemplated under the Subpart S informal procedures. Moreover, since informal procedures seek to provide a prompt and cost effective adjudication of complaints prolonged and complicated discovery defeats that purpose. Claimant should already have provided relevant evidence regarding its claims.

Order Denying Second Discovery Request at 4-5.

In addition, the Order Denying Discovery Request directed the parties to brief the issues:

1. Whether Claimant had the ability to return the chassis in question on the days the per diem was charged.

2. Whether Respondents' imposition of a per diem charge for the days at issue gives rise to a violation of section 41102(c). In particular, the parties should discuss whether Respondents' imposition of the per diem charges was "unjust and unreasonable" under the elements set forth in sections 545.4 and 545.5.

3. Whether Claimant is entitled to the relief requested in light of the Commission's statements in the final rules for sections 545.4 and 545.5.

Order Denying Second Discovery Request at 5-6.

On January 8, 2021, Claimant submitted its brief on the outlined issues. On January 11, 2021, Respondents' brief on the issues was also received. On January 18, 2021, Claimant submitted its reply brief and on January 25, 2021, Respondents' reply brief was received.

## C.    Argument of the Parties

Claimant alleges that Respondents' practice of charging per diem for weekends, holidays and temporary port closures, such as closures due to Covid-19, when Claimant has no ability to return empty containers to the port violates section 41102(c), and runs contrary to the guidance in section 545.4(d). Amended Cl. Pg. 2 at III(a). Claimant posits that "such practice serves as no motivating factor for increasing cargo fluidity, is not in harmony with the intent of the Shipping Act and serves only to financially benefit the Respondent." Amended Cl. Pg. 2 at III(a). Claimant maintains that had the port been operating as normal rather than under Covid-19 hours, Claimant would have had 3 days less of per diem charges for the container ($150 per day), and 22 days less of per diem charges for the chassis ($20 per day), totaling $510.00. Amended Cl. Pg. 3 at IV.

Claimant contends that there are more economical choices available on the market than Respondents' chassis fee rates of $20 per day past four free days, and argues that since chassis fees are negotiated solely with the BCO, Respondents should be directed to invoice the BCO directly. Amended Cl. Pg. 2 at III(c) and Pg.4. Claimant asserts in addition, that it "has access to better equipped, safer and more affordably priced chassis than the daily chassis per diem rate of $20 invoiced by Respondent." Amended Cl. Pg. 4.

While Claimant "understands the reasoning behind per diem charges, it does not see the charges justified when they are billed through port closures." Amended Complaint at 3 – 4. Claimant posits that "Respondent[s] and all marine lines should be required to bill their customers directly for per diem, where the customer can review the accuracy of any charges against the contract between the marine line and BCO." Amended Cl. Pg. 4.

6

Respondents argue that the complaint against Evergreen-Agent warrants dismissal for lack of jurisdiction because Evergreen-Agent is merely the North American agent for Evergreen-Principal and not a regulated entity subject to the provisions of 46 C.F.R. § 545.5(b), such as a Vessel-Operating Common Carrier ("VOCC"), Marine Terminal Operator ("MTO"), or Ocean Transportation Intermediary ("OTI"). Answer Pg. 4 and 6 at Part 3; Answer to Amended Cl. at Pg. 6 Nos. 6 - 7; Resp. Brief Pgs. 5 - 7 at Point 3. Respondents argue, in addition, that the complaint warrants dismissal because, according to them, Claimant has suffered no monetary damages as the BCO reimbursed Claimant the per diem charges at issue, and opine that the rest of the relief sought by Claimant cannot be granted by the SCO as only monetary damages may be awarded in small claims proceedings. Resp. Brief Pg. 2; Answer to Amended Cl. Pg. 5. In addition, Respondents argue that that the Commission lacks subject matter jurisdiction over this complaint because, "the performance of private number maritime contracts between ocean carriers and motor carriers is not generally within the Commission's jurisdiction." and, according to them, the Commission's jurisdiction may only be found where through bills of lading terms are applicable to resolving the dispute; the ocean carrier's tariff is applicable to resolving the dispute; or terms that are objectionable under Section 41102(c) are contained only in the individual carrier's UIIA Addendum. Resp. Brief Pgs. 3 - 5 at Point 2.

Respondents further argue that before receiving Respondents' equipment Claimant signed a Preferred Trucker Agreement which required Claimant to be bound by the provisions of the UIIA and Evergreen Addendum, the UIIA provisions obligate Claimant to pay per diem for late returned equipment, and Claimant offers no just reason why its should be relieved of its contractual obligations or state that it was a victim of fraud or duress in agreeing to the UIIA, Evergreen Addendum, and Preferred Trucker Agreement. Answer Pg. 7 - 8. In addition, Respondents assert that Claimant was well aware the port would be closed on Saturday, May 23rd and that Claimant's free time expired before May 23rd "[t]herefore, under the well-established principle of 'Once on demurrage, always on demurrage,' as well as the UIIA, the Addendum and respondent's per diem rule, claimant's failure to return the equipment before May 23rd entitled respondent to the now disputed per diem." Answer Pg. 10. Respondents state that Claimant contractually assumed the risk of a late return of equipment by its BCO and it was that late return that caused its loss. Answer Pg. 10.

Respondents argue moreover, that Claimant cannot meet the Rule 545.4 criteria for establishing a Section 41102(c) claim as, according to them, Claimant has not proven the elements set out in Section 545.4. Resp. Brief Pg. 7 at Point 4; Answer to Amended Cl. Pg. 12. Respondents state that Claimant has not alleged facts sufficient to show that the issues in dispute rise to the level of "unjust" or "unreasonable." Answer to Amended Cl. Pg. 12. In addition, Respondents note that Claimant billed Yamaha for per diem in an amount higher than Claimant was billed for the disputed per diem charges. This fact, argue Respondents, contradicts Claimant's allegation that the practice of billing per diem during port closures "serves only to financially benefit the Respondent" and also goes to the issue of whether the billing arrangement is "just and reasonable." Answer to Amended Cl. Pg. 12. Respondents argue that if Claimant is marking up the per diem it cannot argue that the practice is either unjust or unreasonable. Answer to Amended Cl. Pg. 12. Respondents state that were Claimant's request for relief to be granted it would deprive Respondents of contract rights and impose obligations on Respondent that are not imposed on any other FMC regulated entities. Answer Pg. 2 at Part 1, No. 4.

## II.      PERTINENT FACTS ESTABLISHED BY THE RECORD ("PF")

1.      Claimant TCW, Inc., a corporation based in Nashville, Tennessee, is one of the largest asset-based transportation providers in the Southeast. Amended Cl. Pg. 1 at I.

2.      Respondent Evergreen-Agent is a New Jersey corporation, which acts as a North American general agent for Respondent Evergreen-Principal. Answer Pgs. 3 – 4 at Part 3 Nos. 1 and 2.

3.      "As part of Evergreen-Agent's agency responsibilities, it engages the services of motor carriers, such as claimant, to perform inland carriage of certain import cargoes, as may be required by Evergreen-Principal's various intermodal bills of lading or sea waybill contracts with beneficial cargo owners." Answer Pg. 4 at Part 3 No.3.

4.      Respondent Evergreen-Principal is an ocean/intermodal common carrier of goods by sea in the foreign commerce of the United States. Answer to Amended Cl. Pg. 2 at II.2.

5.      Yamaha Motor Company, Ltd. ("Yamaha") is the beneficial cargo owner ("BCO") for the cargo on which the disputed per diem was charged. Resp. Exh. 10 (Evergreen Line Sea Waybill).

6.      Evergreen-Principal and Yamaha entered into a port to door transportation agreement to deliver Yamaha's cargo from the Port of Shimizu, Japan to Yamaha's facility in Newnan, Georgia. Resp. Exh. 10 (Evergreen-Principal Sea Waybill).

7.      On March 14, 2020, Evergreen-Principal issued Yamaha a non-negotiable sea waybill. Resp. Exh. 10.

8.      The non-negotiable sea waybill reflected the port of loading for the cargo as the Port of Shimizu, Japan and the place of delivery as Newnan, Georgia. Resp. Exh. 10 (Evergreen Principal Sea Waybill).

9.      As part of the through transportation arrangement, Yamaha designated Claimant as its preferred trucker for transporting the shipment from the port of Savannah to Yamaha's facility in Newnan, Georgia. Resp. Exh. 9.

10.      As an additional part of the arrangement, Yamaha, TCW, and Evergreen-Agent "as agent for Evergreen[-Principal]," signed a "Preferred Trucker Agreement" in which, among other terms in the contract, Respondents agreed to the designation of TCW as the preferred trucker for Yamaha's import and export cargoes. Resp. Exh. 9 (Preferred Trucker Agreement) at 1.

11.      The Preferred Trucker Agreement incorporates the terms of a service contract between Evergreen-Principal and Yamaha, the terms of Evergreen-Principal's non-negotiable sea waybill for the transportation, and Evergreen-Principal's tariff, but notes that the terms and conditions of the Preferred Trucker Agreement will control in the event of a conflict. Resp. Exh. 9 (Preferred Trucker Agreement).

12.    "As a condition precedent to being authorized" as the preferred trucker, the Preferred Trucker Agreement requires TCW to be a signatory to the UIIA and Evergreen Addendum. Resp. Exh. 9 at 1; Answer Pg. 4 at Part 3 No.4.

13.    The UIIA is "a contract between the industry's Motor Carriers on the one hand, and industry's Equipment Providers . . . on the other hand [which] regulates Motor Carriers' access to and use of the Providers' containers and chassis, in the land transportation of cargo." Answer Pg. 4 at 4(a).

14.    The Evergreen Addendum "supplements the industrywide, general provisions of the UIIA by including details such as free time and per diem rates that are specific to Respondent's business." Answer Pg. 4 at 4(b).

15.    The UIIA and Evergreen Addendum require motor carriers to pay per diem charges for unreturned equipment once free time has expired. Answer Pgs. 4 – 5 at 4(c); Resp. Exh. 1 Pg. 7 at 6(b - c).

16.    The UIIA provides that an equipment provider may permit a period of uncompensated use of equipment and thereafter impose per diem. Resp. Exh. 1 Pg. 7 at Section E.6(a).

17.    The UIIA does not require that per diem be imposed on weekends and holidays. Resp. Brief Pg. 5 at Point 2(c)(i); Resp. Exh. 1 Pg. 7 at Section E.6(a) ("Provider may . . . impose Per Diem . . . as set forth in its Addendum").

18.    The provision imposing per diem charges on weekends and holidays are contained in the Evergreen Addendum. Answer Pg. 4 – 5 at No. 4(c); Resp. Exh. 4 Pg. 2 at 3(b) (Evergreen Addendum).

19.    The UIIA provides that the Motor Carrier shall be responsible for Per Diem and the Provider shall invoice the Motor Carrier for Per Diem. Resp. Brief Pg. 5 at Point 2(c)(ii); Resp. Exh. 1 Pg. 7 at Section E.6(b - c).

20.    As was Respondents' practice, Respondents provided a free chassis to TCW for use in transporting the Yamaha shipment. Answer Pg. 11 at Part 3 No. 21.

21.    Respondents did not require Claimant to use Respondents' containers or chassis. Answer Pg. 11 at Part 3 No.21; Answer to Amended Cl. Pg. 13 at No. 34.

22.    Under the shipping agreement Yamaha was entitled to receive 21 days of free time for the container and 4 days of free time for use of the chassis. Amended Cl. Exh. F, G; Answer to Amended Cl. Pg. 17 at No. 42.

23.    Claimant picked up the equipment at issue on April 28, 2020, and returned the equipment on May 26, 2020. Amended Cl. Exh. F (Evergreen-Agency Per Diem Invoice).

24.    The Port of Savannah, where the equipment was to be returned, was closed for business from May 23, 2020, to May 25, 2020. Amended Cl. Pg. 4; Resp. Brief Pg. 8 at Point 5.

9

25.    Effective March 2, 2020, the Port of Savannah was temporarily closed on Saturdays, including Saturday, May 23, 2020, due to reduced business as a result of the COVID-19 pandemic. Cl. Exh. E.

26.    The Port of Savannah is regularly closed on Sundays, including on Sunday, May 24, 2020. Cl. Brief at 2; Cl. Exh. E; Resp. Brief Pg. 8 at Point 5.

27.    The Port of Savannah was closed on Monday, May 25, 2020, for the Memorial Day holiday. Amended Cl. Pg. 4; Cl. Exh. E.

28.    The free time for the container ended on May, 19, 2020, and the free time for the chassis ended on May 4, 2020. Amended Cl. Exh. F (Evergreen-Agency Per Diem Invoice).

29.    By the time the equipment was returned the free time for the container had expired by 7 days and by 22 days for the chassis. Amended Cl. Pg. 3 at IV.; Amended Cl. Exh. F.

30.    After expiration of the equipments' free time, Respondents imposed a charge of $150 for each day after the container's expiration time and $20 for each day after the chassis' expiration time. Amended Cl. Exh. F; Resp. Brief Pg.7 n.2.

31.    Evergreen-Agent charged TCW per diem charges of $1,050.00 for 7 days for the container and $440.00 for 22 days for the chassis. Amended Cl. Exh. F; Answer Pg. 3 at Part 2.

32.    Respondents invoice per diem for weekends and holidays. Amended Cl. Pg. 2 at III; Amended Cl. Exh. G; Answer to Amended Cl. Pg. 2 at III.a.

33.    On June 2, 2020, TCW emailed a request to Respondents to remove the per diem charges stating:

>    The empty was available for pick up on 5/23. We picked up then and sent to our Savannah yard. Had Savannah been operating under normal hours (prior to Covid 19), we could have ingated Saturday. Monday the 25th was Memorial day, so we then ingated the next open day on 5/26.

Amended Cl. Exh. G (Email from Ben Banks, TCW Inc., to Thierry Turquet, Evergreen Shipping Agency (America) Corp., dated 06/02/2020).

34.    On June 2, 2020, Evergreen responded:

>    The free time under this contract is 21 Calendar days, so everday count[s], holidays and weekends included. Charges are correct . . .

Amended Cl. Exh. G (Email from Thierry Turquet, Evergreen Evergreen Shipping Agency (America) Corp., to Ben Banks, TCW, Inc. dated 06/02/2020).

35.    On June 6, 2020, Claimant paid Respondents the disputed $510.00 per diem charges. Amended Cl. Pg. 3 at IV; Answer Pg. 11 at IV; Answer to Amended Cl. Page 3 at IV.

36.    Although Claimant paid Respondents $1,490 for per diem charges on the equipments at issue, Claimant invoiced Yamaha, the BCO, in the amount of $1,788 for the same charges, and the BCO paid Claimant's invoice.  Claimant Invoice No. 084001 to Yamaha dated 06/05/20 (submitted with Cl. Response to Order for Supplemental Information).

37.    Claimant charged Yamaha $1260.00 for 7 days of per diem for the container, a rate of $180 per day, and $528.00 for 22 days of per diem for the chassis, a rate of $24 per day. Claimant Invoice No. 084001 to Yamaha dated 06/05/20.

38.    Yamaha paid Claimant $1788.00 for the per diem charges. Yamaha ACH Payment Advice dated 08/21/2020 (submitted with Cl. Response to Order for Supplemental Information).

## III.    DISCUSSION

Respondents deny Claimant's allegations but also assert that the Commission lacks both personal and subject matter jurisdiction to adjudicate this claim. Respondents also assert that the relief sought by Claimant cannot be granted in a small claims proceeding. The submissions by the parties and SCOs orders herein discussed constitute the evidence of record for this decision.

### A.    Controlling Authority

Respondent Evergreen-Principal is a vessel-operating-common carrier. A vessel-operating-common carrier is defined under the Shipping Act as "a person that -- (A) in the United States, dispatches shipments from the United States via a common carrier and books or otherwise arranges space for those shipments on behalf of shippers; and (B) processes the documentation or performs related activities incident to those shipments." 46 U.S.C. § 40102(19).

A "common carrier" is a person that –

(i)     holds itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation;

(ii)    assumes responsibility for the transportation from the port or point of receipt to the port or point of destination; and

(iii)   uses, for all or part of that transportation, a vessel operating on the high seas or the Great Lakes between a port in the United States and a port in a foreign country . . . .

46 U.S.C. § 40102(7).

11

The Commission's jurisdiction extends to ocean transportation involving through transportation. "The term 'through transportation' means continuous transportation between origin and destination for which a through rate is assessed and which is offered or performed by one or more carriers, at least one of which is a common carrier, between a United States port or point and a foreign port or point." 46 U.S.C. § 40102(26).

Claimant alleges that Respondents violated the Shipping Act. Under 46 U.S.C. Chapter 411, a complaint may be filed with the Commission alleging a violation of the Shipping Act and seeking reparations. In instances where the amount sought for damages does not exceed $50,000, a complainant has the choice to file a formal or informal complaint. A respondent sued under the Commission's informal procedures has the option not to consent to adjudication of the dispute under the informal procedures. The Rules governing informal procedures are set forth at Subpart Part S, 46 C.F.R. §§ 502.301 - 502.305. If the respondent does not consent to the use of informal procedures, the complaint is converted to a formal proceeding and adjudicated by an administrative law judge, using the formal procedures set forth in the Commission's Rules at Subpart T, 46 C.F.R. §§ 502.311 – 502.321. Here, Claimant filed its complaint under Subpart S and Respondents consented to the use of the informal procedures. The Subpart S Rules are thus controlling.

Section 502.301 at Subpart S provides:

> (a) Section 11(a) of the Shipping Act of 1984 (46 U.S.C. 41301(a)) permits any person to file a complaint with the Commission claiming a violation occurring in connection with the foreign commerce of the United States and to seek reparation for any injury caused by that violation.

> (b) With the consent of both parties, claims filed under this subpart in the amount of $50,000 or less will be decided by a Small Claims Officer appointed by the Federal Maritime Commission's Chief Administrative Law Judge, without the necessity of formal proceedings under the rules of this part. Authority to issue decisions under this subpart is delegated to the appointed Small Claims Officer.

> (c) Determination of claims under this subpart shall be administratively final and conclusive. [Rule 301.]

46 C.F.R. § 502.301. "Where appropriate, the Small Claims Officer may require that the respondent publish notice in its tariff of the substance of the decision." 46 C.F.R. § 502.304(g).

Claimant alleges that Respondents violated section 41102(c) of the Shipping Act which provides: "A common carrier, marine terminal operator, or ocean transportation intermediary may not fail to establish, observe and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property." 46 U.S.C. § 41102(c). To establish a successful claim for reparations under section 41102(c), the claimant must demonstrate that:

> (a) The respondent is an ocean common carrier, marine terminal operator, or ocean transportation intermediary;

(b) The claimed acts or omissions of the regulated entity are occurring on a normal, customary, and continuous basis;

(c) The practice or regulation relates to or is connected with receiving, handling, storing, or delivering property;

(d) The practice or regulation is unjust or unreasonable; and

(e) The practice or regulation is the proximate cause of the claimed loss.

46 C.F.R. § 545.4.

Claimant also alleges that Respondents' imposition of per diem charges for the days at issue runs contrary to the guidance provided by the Commission in the Commission's interpretive rule on Demurrage and Detention Rules under Section 41102(c), 46 C.F.R. § 545.5. On May 18, 2020, the Commission issued an Interpretive Rule "clarifying its interpretation of the Shipping Act prohibition against failing to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property with respect to demurrage and detention." Interpretive Rule on Demurrage and Detention Under the Shipping Act ("Final Rule"), 85 FR 29638 (May 18, 2020). The Final Rule adopts with minor changes the interpretive rule published on September 17, 2019, in the Commission's Notice of Proposed Rulemaking: Interpretive Rule on Demurrage and Detention Under the Shipping Act ("NPRM"), 84 FR 48850 (Sept. 17, 2019). The Final Rule provides "guidance as to what [the Commission] may consider in assessing whether a demurrage or detention practice is unjust or unreasonable." 85 FR at 29638. Section 545.5, provides in pertinent part:

(a) *Purpose.* The purpose of this rule is to provide guidance about how the Commission will interpret 46 U.S.C. 41102(c) and §545.4(d) in the context of demurrage and detention.

(b) *Applicability and scope.* This rule applies to practices and regulations relating to demurrage and detention for containerized cargo. For purposes of this rule, the terms demurrage and detention encompass any charges, including "per diem," assessed by ocean common carriers, marine terminal operators, or ocean transportation intermediaries ("regulated entities") related to the use of marine terminal space (*e.g.,* land) or shipping containers, not including freight charges.

(c) *Incentive principle* — (1) *General.* In assessing the reasonableness of demurrage and detention practices and regulations, the Commission will consider the extent to which demurrage and detention are serving their intended primary purposes as financial incentives to promote freight fluidity.

(2) *Particular applications of incentive principle*—(i) *Cargo availability.* The Commission may consider in the reasonableness analysis the extent to which demurrage practices and regulations relate demurrage or free time to cargo availability for retrieval.

13

(ii) *Empty container return.* Absent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, are likely to be found unreasonable.

46 C.F.R. § 545.5.

### B.    Evidence and Burden of Proof.

Claimant has the burden to prove its allegations against Respondents. "In all cases governed by the requirements of the Administrative Procedure Act, 5 U.S.C. 556(d), the burden of proof is on the proponent of the motion or the order." 46 C.F.R. § 502.203. Thus a claimant alleging a violation of the Shipping Act bears the burden of proving its allegations against the respondent. The term, "burden of proof" is understood to mean "the burden of persuasion." *Director v. Greenwich Collieries*, 512 U.S. 267, 276 (1994). The party bearing the burden of persuasion must prove its case by a preponderance of the evidence. *See Steadman v. SEC*, 450 U.S. 91, 102 (1981). When the party with the burden of persuasion produces sufficient evidence (characterized as a prima facie case), the burden of production shifts to the other party to produce evidence rebutting that case. *In re South Carolina State Ports Auth. for Declaratory Order*, 27 S.R.R. 1137, 1161 (FMC 1997). *See also Steadman*, 450 U.S. at 101 ("Where a party having the burden of proceeding has come forward with a prima facie or substantial case, he will prevail unless his evidence is discredited or rebutted."). When direct evidence is unavailable inferences may be drawn from certain facts and circumstantial evidence may be sufficient so long as the fact finder does not rely on mere speculation. *Waterman S.S. Corp v. General Foundries, Inc.*, 26 S.R.R. 1173, 1180 (ALJ 1993). If the evidence produced by both parties is evenly balanced the party with the burden of persuasion will not prevail. *See Greenwich Collieries*, 512 U.S. at 281.

### C.    The Commission has Jurisdiction to Adjudicate this Proceeding

"It is elementary law that a tribunal should determine its jurisdiction before proceeding to the merits of a controversy" *NPR, Inc. v. Board of Commissioners of the Port of New Orleans*, 28 S.R.R. 1178 (ALJ 1999 ). *See also River Parishes Co. Inc v . Ormet Primary Aluminum Corp.*, 28 S.R.R 751, 762 (FMC 1999) ("As the ALJ correctly held, an agency must reach the jurisdictional issues before adressing the merits of the case") (internal citations omitted).

Respondents argue that the Commission lacks jurisdiction over Evergreen-Agent, asserting that Evergreen-Agent is merely an agent for Evergreen-Principal, not a regulated entity subject to the provisions of 46 C.F.R. § 545.5(b). Answer Pgs. 4 and 6 at Part 3; Answer to Amended Cl. at Pg. 6 Nos. 6 - 7; Resp. Brief Pgs. 5 - 7 at Point 3. Respondents further assert that Evergreen-Agent is not a common carrier, marine terminal operator, or an ocean transportation intermediary, and state that determining whether one is a regulated entity is a fact intensive analysis taking into account statutory definitions. They maintain that Claimant has neither shown nor alleged conduct on the part of Evergreen-Agent that makes Evergreen-Agent one of the entities regulated under section 41102(c). Resp. Brief at 5 - 6.

Claimant did not submit any arguments on the issue of whether the Commission has jurisdiction to adjudicate its claim but asserted in its reply brief: "The fact that the respondents

14

act as an ocean common carrier is undeniable. If they do not meet the description of a regulated entity, then what ocean common carrier does?" Cl. Reply Brief at 1.

The evidence shows that Evergreen-Agent imposed the per diem charges at issue on an oceanborne through transportation, over which the Commission has jurisdiction, and forwarded the per diem payments to Evergreen- Principal, the VOCC for the transportation. *See,* Respondents' Response to Order for Supplemental Information Pg. 2 at Question 3:

> **Question 3**: Is any of portion of the per diem payment forwarded to Evergreen Line?

> **Answer 3**: Yes. The per diem is forwarded to Evergreen Line

Because the facts show that the practice at issue occurred during the through transportation of international oceanborne shipping provided by a VOCC, Evergreen-Principal, the Commission has jurisdiction to adjudicate whether the per diem charges imposed by Evergreen-Principal's agent during the inland portion of the through transportation, which it then passed on to Evergreen-Principal, violate the Shipping Act. The fact that the practice in question was facilitated by aid of the VOCC's agent does not remove the challenged practice from the Commission's purview. Additionally, as Respondents note, Evergreen-Agent "signed the UIIA and UIIA addendum [under which the per diem charges were imposed] as principal and not in any representative capacity, thus assuming the contracts' obligations itself." Resp. Brief at 6. The UIIA Addendum, which Evergreen-Agent signed as a principal contains terms that may violate the Shipping Act. Respondents state that Claimant is obligated to abide by those terms under Claimant's agreement with them. Thus, as the principal behind the imposition of the per diem charges subject to the Commission's purview, the Commission has the authority to require Evergreen-Agent, along with Evergreen-Principal, to participate in this adjudication whether the imposed per diem violates the Shipping Act. "A court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F. 3d 1174, 1180 (9th Cir. 2004) (citations omitted). Here, the claim against Evergreen-Agent arises "out of a common nucleus of operative facts" with the claim against Evergreen-Principal, over which the Commission has jurisdiction as a VOCC. Moreover, because by law a principal is responsible for conduct of its agent in the performance of the agent's duties, if reparations were found to be warranted, Evergreen-Principal, not Evergreen-Agent, would bear the cost of the award. *See, e.g.*, *United States v. Dish Network L.L.C*, 954 F.3d 970, 976 (7th. Cir. 2020) ("The norm of agency is that a principal is liable for the wrongful acts of the agent taken within the scope of the agency – that is, the authority to complete the task assigned by the principal.") (citing *Restatement (Third) of Agency §7.08*).

Further, the fact that the practice in dispute involves the inland portion of the through transportation does not deprive the Commission of subject matter jurisdiction.

> Nothing in [the Final Rule] limits its scope to shipping activities occurring at ports or marine terminals. Rather, section 41102(c) concerns ocean carrier, marine operator, and ocean transportation intermediary practices and regulations "relating

15

to or connected with receiving, handling, storing, or delivering property." Ocean carrier demurrage and detention practices are subject to section 41102(c) and Commission oversight, regardless of whether the practices related to conduct at ports or in land, with some caveats. First, not everything an ocean carrier marine terminal operator does is within the Commission purview - an ocean carrier marine terminal operator must be acting as a common carrier or marine terminal operator as defined by the Shipping Act with respect to the conduct at issue. Second, the Commission must be careful not to encroach into the jurisdiction of other agencies such as the Surface Transportation Board, which is itself considering issuing guidance similar to that in the Commission's rule.

85 FR at 29650. Here, Evergreen-Principal was the VOCC for the transportation at issue and Evergreen-Agent imposed the disputed per diem charges in connection with a port to door transportation from Japan to Newnan, Georgia. The Commission thus has jurisdiction to adjudicate this matter.[5]

Respondents further argue that, "the performance of private number maritime contracts between ocean carriers and water carriers is not generally within the commission's jurisdiction" as, according to them, the commission's jurisdiction may only be found where through bills of lading terms are applicable to resolving the dispute; the ocean carrier's tariff is applicable to resolving the dispute; or terms that are objectionable under Section 41102(c) are contained only in the individual carrier's UIIA Addendum. Resp. Brief Pgs. 3 - 5 at Point 2. In addition, Respondents argue that the per diem charges are regulated by the UIIA, and the Evergreen Addendum, and Evergreen-Agent executed those documents as a principal. Answer at 4 - 6.

---

[5] Claimant's allegations regarding the per diem charges encompass charges related to the late return of a container and a chassis. In the Final Rule, the Commission defines "demurrage" and "detention" to "cover all charges customarily referred to as demurrage, detention, or per diem," but "limits these definitions to 'shipping containers' to exclude all charges related to other equipment, such as chassis. . . ." 85 F.R. at 29649. While none of the parties have raised the issue of whether per diem charges related to chassis may be adjudicated, a brief discussion touching on this issue may be warranted (*see, e.g., Buford v. Resolution Trust Corp,* 991 F.2d 481, 485 (8th Cir. 1993) (lack of subject matter jurisdiction, unlike many other objections to jurisdiction cannot be waived)). *See also, In re Ben Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980) (subject matter jurisdiction is limited by the constitution and Congress, and cannot be expanded by judicial interpretation or by the acts or consent of the parties to a case).

The Commission indicates in the Final Rule that it "may, in an appropriate case, consider chassis availability in the analysis. In doing so the Commission would be especially careful to analyze how the chassis supply model at issue relates to the primary incentive purpose of the demurrage and detention." 85 FR at 29655. More importantly, the Commission notes that "Section 41102(c) does not cover chassis providers who do not otherwise fall within the definition of a regulated entity under the Shipping Act." 85 FR at 29650 n.185. I infer from this statement that section 41102(c) covers a situation such as this, where Evergreen-Principal is an ocean common carrier and Evergreen-Agent imposed the per diem on its behalf.

Respondents also argue that "[t]he Shipping Act was enacted to protect the shipping public, not private land-based carriers who might contract with a VOCC, MTO, or OTI" (citing *Pro Transport, Inc. v. Seaboard Marine of [Florida, Inc.*, Docket No. 16-12] (ALJ 2017)). Also, they argue, that Claimant is a land carrier who entered into a private agreement which required it to be responsible for per diem, therefore, Claimant "has no right of action in regard to a private drayage agreement under the Shipping Act." Answer to Amended Cl. Pg. 6. Further, Respondents argue that this litigation concerns a non-maritime, domestic, land-based, Preferred Trucker Agreement governing the land use and compensation of containers and chassis, and that these are matters not contemplated by the Shipping Act which is intended to regulate sea carriage, not private agreements between ocean and land carriers. Answer to Amended Cl. at 7. They state that the fact that the UIIA and Evergreen Addendum were incorporated by reference into the Preferred Trucker Agreement gave them private contract status. Answer to Amended Cl. at 7.

That the parties are signatories to the UIIA does not prevent the Commission from asserting jurisdiction over the issue whether the per diem charge is unjust and unreasonable. As the Commission notes: "Ocean carrier practices, whether incorporated in the UIIA, or not, are within the Commission's purview under section 41102(c))." Final Rule, 85 FR at 29649. Commenters to the NPRM raised similar arguments that the interpretive rule would "interfere with private and lawful commercial arrangements." 85 FR at 29648. The Comission responded:

> But whether commercial arrangements are lawful is the point. Ocean carriers and marine terminal operators( and ocean transportation intermediaries) do not have an unbound right to contract for whatever they want. They are limited by the prohibitions of the Shipping Act, one of which is section 41102(c). Although the general trend in the industry has been regulatory, Congress retained section 41102(c) when it enacted the Ocean Shipping Reform Act in 1998. In this sense, ocean carriers and marine terminal operators are no different from participants in other regulated industries.

> Ocean carriers and marine terminal operators benefit, however, from limited antitrust immunity for their agreements with their competitors, and they are also the beneficiaries of cargo lien laws and law regarding tariffs and published marine terminal schedules, all of which may affect the negotiating playing vis-à-vis shippers, intermediaries, and truckers. Whatever their merits, both tariffs and marine terminal schedules share elements of contracts of adhesion: they are presented on a take-it-or-leave it basis, without the chance for much negotiation . . This is not to say that shippers and intermediaries do not negotiate certain aspects of demurrage and detention, such as free time, in service contracts. But many, if not, most, shippers lack significant bargaining power as compared to ocean carriers. The same goes for intermediaries and truckers. Under such circumstances, there is reason for the Commission to carefully scrutinize arguments that shippers, intermediaries, and truckers have the ability meaningfully to negotiate contractual terms relating to demurrage and detention.

85 FR at 29648.

Equally misguided, is Respondents' reliance on *Pro Transport*. In that case, a domestic trucker brought a complaint related to an agreement between the trucker and the ocean carrier for the trucker to provide inland trucking services to the ocean carrier. When a dispute arose between the parties based on the ocean carrier's discontinuance of use of the trucker's services and refusal to pay the trucker's outstanding invoices, the trucker sued the ocean carrier, alleging a violation of the Shipping Act. That case was ultimately settled by the parties and the Commission did not have an opportunity to weigh in as to whether jurisdiction existed to adjudicate the case. *Pro Transport*, Docket No. 16-12, Joint Letter Regarding Status (May 2, 2017). Here, by contrast, the claim is brought by a trucker alleging a violation of the Shipping Act in the imposition of per diem flowing from the inland segment of of an international oceanborne port to door through transportation.

Abundant caselaw makes it clear that the Commission has jurisdiction over complaints inherently related to Shipping Act violations. For instance, in *Cargo One*, the Commission held that the appropriate test for the Commission's jurisdiction is whether a complainants' allegations "also involve elements peculiar to the Shipping Act." *Cargo One, Inc. v. COSCO Container Lines Company, Ltd.*, 28 S.R.R. 1635, 1645 (FMC 2000). The Commission found in that case that allegations of violations of section 10(d)(1) (the predecessor to section 41102(c)) involving just and reasonable regulations and practices "are inherently related to Shipping Act prohibitions and are therefore appropriately brought before the Commission" *Id.*

Similarly, in *Mitsui*, the Commission held that it has jurisdiction over through intermodal transportation, including the inland segment of the through transportation. *Mitsui O.S.K. Lines Ltd. v. Global Link Logistics, Inc*., 2011 FMC LEXIS 12 at *18-*19 (FMC 2011). The Commission dismissed the respondents' contention that Shipping Act violations apply only to ocean transportation stating: "giving congressional intent that the Commission have jurisdiction over through intermodal transportation, including the inland segment of the through transportation, and the Commission's acknowledgment of this jurisdiction, [Respondent's] argument . . . is not persuasive." *Mitsui*, 2011 FMC LEXIS 12 at *19.

The jurisdictional issues raised in the above-discussed cases are similar to the case at bar. Accordingly, I find that the Commission has personal and subject matter jurisdiction to adjudicate this complaint.

18

**D.      Claimant's Requested Relief May be Granted in a Small Claims Proceeding**

As previously noted, Respondents asked in their Request for Dismissal that TCW's non-reparations claims be dismissed because, according to Respondents, small claims officers cannot issue non-monetary judgments as "Regulation 502.301 (a - b) allows a small claims officer to decide only 'reparation' claims. A claim for 'reparation' means one for money damages." (Citing 46 C.F.R. 502.62 (a) (4). Request for Dismissal at 1, 5. As also noted, their request for dismissal was denied, finding that the claims were well within the purview of a small claims proceeding. Order Denying Dismissal at 2. Respondents repeated these arguments in their Answer to the Amended Complaint, and noted in their brief that they:

> reserve their right to appeal from[6]: So much of the S.C.O.'s October 15, 2020 Order, at p.2, as held that an Informal Small Claims proceeding may grant relief other than reparations. See, Rachel E. Dickon, 'Filing a Small Claims Complaint' (FMC Web Site) (Accessed 01/09/20) ('A small claim may be filed to seek reparations (damages) from another individual or company (the Respondent) for economic injury not exceeding $50,000 caused by violations of the Shipping Act . . . .' - Making no mention of non-monetary judgments).

Resp. Brief Pg. at (2). See also Answer to Amended Complaint at 5.

Respondents' reliance on the above-quoted statement as proof of their argument is misplaced. While it is true, as noted in the statement, that a small claim may be filed to seek damages for economic injury not exceeding $50,000, what that statement does not say, however, is that only a money judgment may be issued in small claim proceedings. Of note, the website also states with regard to formal proceedings that "[a] formal complaint may be filed with the Commission to allege violations of the Shipping Act under 46 U.S.C. Chapter 411 and to seek reparations (damages)." Fmc.gov/resources-services/filing-a-formal-complaint/ (Accessed February 3, 2021). This statement equally makes no mention of non-monetary judgments. Following Respondents' logic, one could equally conclude that non-monetary judgments may not be issued in formal proceedings.

---

[6] Respondents also "reserve their right to appeal from" the order denying their second request for discovery. Resp. Brief Pg. 2 at No. 2. As a clarification regarding the small claims procedures, section 502.304(g) states that small claims decisions "shall be final" unless reviewed by the Commission, and sections 502.304(a) and (e) make it clear that only the small claims officer may request information and documents from the parties. *See* 46 C.F.R § 502.304(a) and (e).

Similarly, Respondents asked that this case "be stayed pending resolution of the Docket No. 20-14 complaint in which the jurisdictional and other issues mirror those raised by Claimant in this case." Answer to Amended Cl. Pg. 7 - 8. While the request to stay this proceeding is now moot given that a decision has been issued, it should be clarified that the informal procedures do not make provision for staying a small claims proceeding. Moreover, Respondents do not articulate a basis why small claims proceedings should be stayed when similar claims are raised in a formal proceeding.

Section 502.301, governing Subpart S proceedings, provides in pertinent part:

(a) Section 11(a) off the Shipping Act of 1984 (46 U.S.C. 41301(a)) permits any person to file a complaint with the Commission claiming a violation occuring in connection with the foreign commerce of the United States and to seek reparation for any injury caused by that violation.

46 C.F.R. § 502.301(a).

Thus, the provisions of section 11(a) are applicable to small claims proceedings. "Furthermore, section 11(a) of the Shipping Act makes it clear that one may, but need not, seek reparations in a filed complaint." *Anchor Shipping Co. v. Aliança Navegação E Logística Ltda.,* 2006 FMC LEXIS 19 at *34 (FMC 2006) (Chairman Blust and Commission Dye Concurring).

Moreover, section 502.304(g) plainly states that "[w]here appropriate, the Small Claims Officer may require that the respondent publish notice in its tariff of the substance of the decision," giving authority to the small claims officer entailing the issuance of a non-monetary order. 46 C.F.R. § 502.304(g). More importantly, as explained to Respondents in the Order Denying Dismissal:

> Commission's regulations do not limit small claims officers to awarding only monetary judgments. Indeed, small claims officers have issued non-monetary judgments in the past, including cease and desist orders against respondents found to have violated the Shipping Act. As an example, in *GEO Machinery*, the small claims officer ordered the respondent to release the title of a boat to the claimant and noted that a "cease and desist order may be issued when there is a violation of the Shipping Act." *Geo Machinery FZE v. Watercraft Mix, Inc.* Docket No. 1935(I), [32 S.R.R. 1675] (SCO May 21, 2013) (internal citations omitted), aff'd, 33 S.R.R. 329 (FMC 2014) (Order Affirming Settlement Officer's Decisions). The small claims officer further stated: "I am issuing this order to 'alert the shipping industry, serve to forestall future violations, and facilitate injunctions against possible future unlawful activity.'" *GEO Machinery,* [32 S.R.R. at 1677].

Order Denying Dismissal at 2. Respondents argue that "the respondent [in *Geo Machinery*] defaulted in appearing so the right of a S.C.O. to issue non-reparations relief was not litigated." Answer to Amended Complaint Pt. 7 at 8(b). This argument fails to recognize that the SCO's decision was reviewed de novo by the Commission and affirmed in all respects. Respondents' arguments that Claimant's non-reparations claims cannot be adjudicated in this proceeding are thus refuted by the above evidence.

### E.    The Evidence Establishes a Violation of Section 41102(c)

Claimant alleges that Respondents' imposition of per diem charges for weekends, holidays and temporary port closures due to Covid-19, when Claimant has no ability to return empty containers is a violation of section 41102(c), and runs contrary to the guidance set forth in 545.4(d). Amended Cl. Pg. 2 at III(a). Claimant asserts that the requirements of section 41102(c) are met because Respondents are an ocean common carrier and therefore a regulated entity; Respondents "have billed and continue to have intentions to bill" the per diem charges at issue;

20

the conduct at issue is connected with the delivery of cargo from the Port of Savannah to Yamaha Motors in Newnan GA; the practice or regulation is unjust because it involves the billing of per diem for periods when equipment cannot be returned due to port closure resulting from holidays, weekends, or reduced port-operating hours, as stated in the Commission's Final Rule on demurrage and detention; and the loss suffered by Claimant directly results from the unreasonable practice. Cl. Brief Pg. 1.

Respondents argue that to establish a claim under section 41102(c), Claimant must prove all elements set out in Section 545.4 which, according to Respondents, Claimant cannot do. Resp. Brief Pg. 7 at Point 4. Respondents posit that while the billing and per diem issues in dispute relate to, or are connected with, receiving, handling, storing, or delivering property, Claimant's complaint is not within the Commission's jurisdiction because Claimant is a motor carrier; the matters complained of are not unjust or unreasonable; and Claimant cannot show damages or proximate causation because it was reimbursed for the per diem charges in dispute by the BCO. Resp. Brief Pg. 7 at Point 4.

### 1. Criteria Required to Prove a Section 41102(c) Claim for Reparations

Section 545.4 provides that to establish a successful claim for reparations under section 41102(c), (which states: "a common carrier, marine terminal operator, or ocean transportation intermediary may not fail to establish, observe and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property"), a claimant must demonstrate that the respondent is an ocean common carrier, marine terminal operator, or ocean transportation intermediary; that the alleged conduct is "occurring on a normal, customary, and continuous basis;" the practice or regulation in dispute relates to or is connected with receiving, handling, storing or delivering property; is unjust or unreasonable, and is the proximate cause of the claimed loss. *See* 46 U.S.C. § 41102(c) and 46 C.F.R. § 545.4(d).

In addition, on May 18, 2020, the Commission published at section 545.5, a rule containing guidance as to what the Commission would consider in assessing whether a demurrage or detention practice is "unjust or unreasonable." Of note, that section provides that "in assessing the reasonableness of demurrage and detention practices and regulations, the Commission will consider the extent to which demurrage and detention are serving their intended primary purposes as financial incentives to promote freight fluidity." 46 C.F.R. § 545.5(c).

### a. Respondent Evergreen-Principal is an Ocean Common Carrier and Evergreen-Agent Imposed the Per Diem on Evergreen-Principal's Behalf

Claimant argues that the fact that Respondents "act[ed] as an ocean common carrier is undeniable. If they do not meet the description of a regulated entity, then what ocean common carrier does?" Cl. Brief Pg. 1. Respondents state that Evergreen-Principal's status as a regulated entity is undisputed but that "missing from Claimant's case is any evidence that Evergreen-Agent is regulated." Resp. Reply Brief Pg. 1.

Evergreen-Principal is an ocean common carrier (see PF 4), and Evergreen-Agent imposed the per diem charges at issue on the ocean common carrier's behalf. Claimant thus demonstrates the first element to prove its section 41102(c) claim for reparations.

### b. The Claimed Act is Occurring on a Normal, Customary, and Continuous Basis

Claimant argues that the claimed acts are occurring on a normal, customary, and continuous basis because Respondents "have and continue to have intentions to bill per diem" for the days that equipment cannot be returned due to port closure resulting from holidays, weekends or reduced port operating hours during the COVID-19 pandemic, and "have and continue to have" intentions to bill Claimant for per diem charges rather than directly to the BCO with whom they negotiate the shipping contracts[7]. Cl. Brief Pg. 1 - 2. Respondents do not address the issue whether the element requiring the claimed act to be occurring on a normal customary and continuous basis is satisfied but note that "Evergreen's only intent is to bill per diem allowed by the [Preferred Truck Agreement] that Claimant freely agreed to." Resp. Reply Brief Pg. 2.

Respondents indicate that the requirement to pay per diem charges on weekends and holidays, as well as during temporary port closures are contained in the Evergreen Addendum, and that it is "a condition precedent to being authorized" as a preferred trucker that a trucker agree to terms of the Evergreen Addendum. PFs 12, 18. In addition, Evergreen expresses an intention to continue to impose the per diem as authorized under the Evergreen Addendum. Resp. Reply Brief at 2. The evidence thus establishes that imposition of the disputed per diem charged by Respondents is "occurring on a normal, customary, and continuous" basis and is a part of Respondents' normal business practices. Accordingly, this element required to demonstrate a section 41102(c) violation is also demonstrated.

### c. The Practice in Dispute Relates to or is Connected with Receiving, Handling, Storing, or Delivering Property

The parties do not dispute that the per diem charges at issue relate to or are connected with receiving, handling, storing, or delivering property. Claimant posits that this element is "[c]onfirmed, as Respondents provide[d] delivery orders to Claimant to move from the [P]ort of Savannah to Yamaha Motors in Newnan, Georgia." Cl. Brief Pg. 2. Respondents assert: "While the billing and per diem matters complained of relate to, or are connected with, receiving, handling, storing, or deliverirng property, the Claimant is a motor carrier. Claimant's claims are outside of the Commission's jurisdiction."

The disputed per diem charges were imposed in connection with the delivery of cargo to the shipper's facility as part of a through transportation between Evergreen-Principal and Yamaha. PFs 6 – 7. Respondents' suggestion that this provision does not apply to motor carriers is inaccurate. In the Final Rule, the Commission identified truckers as one of the entities it sought to protect when it issued the interpretive rule on demurrage and detention practices under

---

[7] While Claimant raises objections to invoicing it for per diem charges rather than the BCO, it does not allege that the conduct violates section 41102(c), but merely requests that Respondents be ordered to send the invoices directly to the BCO.

section 41102(c), noting that the interpretive rule was intended to reflect, the principle that *inter alia*, "importers, exporters, intermediaries, and *truckers* should not be penalized by demurrage and detention practices when circumstances are such that they cannot retrieve equipment from or return equipment to marine terminals . . . ." Final Rule, 85 FR at 29638 (emphasis added). The element requiring that the practice be connected with receiving, handling, storing, or delivering property is thus also established.

### d.  The Practice in Dispute is Unjust and Unreasonable

Respondents assert that "Regulations and Practices" refers only to tariffs, not private contracts (citing to 46 C.F.R. § 520.2 "Tariff means a publication containing the actual . . . *regulations and practices* of a common carrier . . . . The term 'practices' refers to [] usages, customs or modes of operation . . . ." Resp. Brief Pg. 4 at Point 2(b) (emphasis in original)). In addition, Respondents argue that the per diem charges at issue are not practices but merely "contractual provisions in the [Preferred Trucker Agreement] that Claimant freely signed." Resp. Reply Brief Pg. 8. Respondents posit: "[t]he fact that the charges billed to Claimant were due under the [Preferred Truck Agreement] means that they were not unilaterally imposed penalties as Claimant argues, but freely accepted contractual obligations in consideration of getting Evergreens' B.C.O haulage -- work that would have gone to another motor carrier." Resp. Reply Brief Pg. 8.

On December 17, 2018, the Commission issued a Final Rule adopting the interpretive rule revising the elements required to prove a claim for reparations under Section 41102(c), codified at section 545.4 ("Section 41102(c) Final Rule"), 83 FR 64478 (Dec. 17, 2018). The Commission stated in the Section 41102(c) Final Rule:

> In drafting the 1916 Act, and through its revisions and reenactment in 1984, Congress chose the word 'practice' and the phrase, 'establish, observe, and enforce just unreasonable regulations and practices,' to describe actions or omissions engaged in on a normal, customary, and continuous basis. From its origin and as recently as 2001, § 41102(c) was interpreted in line with this understanding. To find a violation of § 41102(c), the Commission consistently required that the unreasonable regulation of practice was the normal, customary, often repeated, systematic, uniform, habitual, and continuous manner in which the regulated common carrier was conducting business. This understanding as to what constitutes 'regulations and practice' under the Shipping Act is supported by multiple accepted rules of statutory construction.

Section 41102(c) Final Rule, 83 FR at 64479.

As discussed, Respondents indicate that the requirement to pay per diem charges on weekends and holidays, as well during port closures are contained in the Evergreen Addendum, and that it is "a condition precedent to being authorized" as a preferred trucker that a trucker agree to terms of the Evergreen Addendum (PFs 12, 18). I find, therefore, that Respondents' imposition of the per diem charges in question derives from a "regulation or practice" as defined in the Section 41102(c) Final Rule because the evidence shows that Respondents' imposition of per diem charges for weekends, holidays, and other port closures is a "normal, customary, often

23

repeated, systematic, uniform, habitual, and continuous" part of Respondents' business process as articulated in the Section 41102(c) Final Rule. 83 FR at 64479. *See also J.M. Altieri v. Puerto Rico Ports Authority*, 7 F.M.C. 416, 420 (ALJ 1962) (stating that in order to constitue a practice the alleged act must involve a "series of such occurrences," rather than "an isolated or one shot occurrence").

Claimant asserts that Respondents' invoicing of per diem charges for weekends, holidays and temporary port closures violates section 41102(c) and runs contrary to the provisions of section 545.4(d) because "[s]uch practice serves as no motivating factor for increasing cargo fluidity, is not in harmony with the intent of the Shipping Act and serves only to financially benefit the Respondent." Amended Cl. Pg. 2 at III(a). Claimant explains that the per diem charges were imposed despite Claimant's "best attempts to work with the BCO and ensure cargo and equipment . . . moved as fluidly as possible," and despite the fact that Claimant could in no way have returned the equipment sooner as the BCO's plant was shut down due to COVID-19 and the Port of Savannah was closed from May 23rd to May 26th due to lower volumes on Saturdays caused by the COVID-19 pandemic and the fact that May 25th was a Memorial Day holiday. Amended Cl. Pg. 3 - 4; Cl. Brief at 1.

In addition, Claimant argues that the Commission's demurrage and detention rule provides that importers, exporters, intermediaries, and truckers should not be penalized by demurrage and detention practices when circumstances are such that they cannot retrieve containers from, or return containers to, marine terminals because under those circumstances the charges cannot serve their incentive function. Cl. Brief Pg. 2 – 3. Claimant states that its argument is supported by this rule "as the port closure directly satisfies 'circumstances as such that they cannot . . . return containers to marine terminals' because under those circumstances the charges cannot serve their incentive function." Cl. Brief Pg. 3. Claimant notes that moreover, in the Final Rule at 29655, the Commission states that "absent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, are likely to be found to be unreasonable." Cl. Brief Pg. 3. Claimant asserts that this statement likewise supports its claim. Cl. Brief Pg. 3. Claimant argues that the per diem charges imposed on it were "clearly unreasonable charges" because there were no "extenuating circumstances" justifying imposition of the charges when the container in question could not be returned. Cl. Brief Pg. 4.

Respondents note that to prevail on a claim under section 41102(c) and Rule 545.4(d), Claimant must show by a preponderance of the evidence that the practices are unjust or unreasonable under section 41102(c). Answer to Amended Cl. Pg. 11 at No. 26. Respondents argue that Claimant has not alleged facts sufficient to show that the matters complained of rise to the level of unjust or unreasonable. Answer to Amended Cl. Pg. 12 at No. 28.  Respondants posit:

> "Unjust" or "unreasonable" (terms that are not defined in the Shipping Act), must mean something more than just that [a] claimant thinks he or she has a way of doing something that is "better suited." Claimant must show that the practice is "contrary to right or justice" or "irrational, foolish, unwise, absurd, silly, preposterous, senseless [or] stupid. [] Otherwise, the F.M.C. is reduced to

24

micromanaging the industry and substituting its business judgment for that of the regulated entities in ordinary business matters.

Answer to Amended Cl. Pg. 11 - 12 at No. 27 (Citing *Black's Law Dictionary*, (6th Ed. 1991)).

> As noted by Claimant, Section 545.5, provides in pertinent part:

> In assessing the reasonableness of demurrage and detention practices and regulations, the Commission will consider the extent to which demurrage and detention are serving their intended primary purposes as financial incentives to promote freight fluidity.

46 C.F.R. § 545.5(c). The Commission also states in the Final Rule that the Interpretive Rule on demurrage and detention under 41102(c) is intended to reflect *inter alia*, the principle that:

> importers, exporters, intermediaries, and truckers should not be penalized by demurrage and detention practices when circumstances are such that they cannot retrieve equipment from or return equipment to marine terminals "because under those circumstances the charges cannot serve their incentive function."

85 FR at 29638. "The Commission explained in the NPRM that practices imposing demurrage and detention charges are incapable of incentivizing cargo movement, such as when a trucker arrives at a marine terminal to retrieve a container but cannot do so because it is in a closed area or the port is shut down, might not be reasonable." Final Rule, 85 FR 29651 (citing the NPRM, 84 FR at 48852). In addition, as the Commission noted with regard to return of empty containers:

> The rule states that absent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, are likely to be found unreasonable. The Commission explained that such practices, absent extenuating circumstances, weigh heavily in favor of a finding of unreasonableness, because if an ocean carrier directs a trucker to return a container to a particular terminal, and that terminal refuses to accept the container, no amount of detention can incentivise its return

85 FR at 29655.

Here, Claimant explains that it was unable to timely return the equipment in question despite its "best efforts to work with the BCO to ensure that the cargo and equipment . . . moved as fluidly as possible," because the BCO's plant was shut down due to COVID-19. Amended Cl. Pgs. 3 - 4; Cl. Brief at 1. Claimant also explains that it was prevented from returning the equipment on Saturday, May 23rd, because the Port of Savannah was closed on Saturdays due to lower volumes resulting from the COVID-19 pandemic, and that it was prevented from doing so on Sunday May 24th, because the port is regularly closed on Sundays. In addition, Claimant states that it was prevented from returning the equipment on Monday, May 25th, because the port was also closed on that day due to the Memorial Day holiday. Amended Cl. Pgs. 3 - 4; Cl. Brief at 1. No evidence contradicts these claims. Therefore, I find that the per diem charges

25

imposed by Respondents from May 23rd to May 25th were unreasonable because they could not have incentivized cargo movement given that the port was closed on those days, making it impossible for Claimant to return the equipment. Accordingly, Respondents' imposition of the per diem charges in question was an unjust act.

Respondents' argue that the port was not closed on Saturday, May 23rd, due to Covid-19 but rather, for commercial reasons and that the closure was not a temporary one. Answer Pg. 9 - 10 at No. 17. This argument is contradicted by an advisory notice from the Georgia Ports Authority ("GPA") titled "COVID-19 (Coronavirus) Update," stating in pertinent part that the GPA had temporarily discontinued Saturday truck gate hours and had experienced a precipitous drop in imports bookings but was "receiving multiple reports that indicate Chinese supply lines and factories are resuming normal production." Answer Exh. E, Email from Georgia Port Authority to TCW, Inc. dated March 12, 2020. The notice thus indicates that the Saturday port closure is connected to the COVID-19 pandemic. Moreover, even if, for the purpose of this argument, the port was closed due to commercial reasons, such a closure would not have made the port any less inaccessible.

Further, by extending protections against unreasonable detention and demurrage practices to entities connected with the movement of ocean cargo, the Commission is not "micromanaging the industry and substituting its business judgment for that of the regulated entities in ordinary business matters" as Respondents suggest (Answer to Amended Cl. Pg. 11 - 12 at No. 27), but rather, acting in line with the Shipping Act's purpose to "provide an efficient and economic transportation system in the ocean commerce of the United States . . . ." 46 U.S.C. § 40101(2).

Respondents state: "Per diem serves not just an incentivizing purpose (encouraging prompt return of ocean carrier equipment such as containers), but a compensatory one, as well. When such equipment is not timely returned, an ocean carrier can suffer two kinds of loss: (i) loss of use of the equipment and its revenue generating capacity; and (ii) in Evergreen's case usage charges which it must pay to any third party equipment providers from whom it obtained the equipment." Resp. Brief Pg. 19 - 20. Respondents explain that the chassis at issue were trip leased during the time in question from a leasing company. Resp. Brief Pg. 20. Respondents state in addition: "in this case, where neither the ocean carrier nor the motor carrier has control over the normal hours of operation set by the Savannah terminal, there will inevitably be a loss period it is just and reasonable that the parties be allowed, by contract, to allocate those losses." Resp. Brief Pg. 20. Respondents state that Evergreen paid its own equipment providers for the chassis let out to Claimant and thus it would be "manifestly unfair" for Claimant not to pay the per diem for the same period Evergreen paid its equipment providers. Answer to Amended Cl. Pg. 18 at No. 47.

The Commission dismissed similar arguments from comment during the rulemaking for section 545.5 that demurrage and detention serve a function of compensating for costs associated with the equipment. The Commission stated in the Final Rule that imposition of per diem to cover operational costs is not a reasonable basis for imposition of demurrage and detention charges. 85 FR 29651. While recognizing that historically, demurrage and detention might have had a compensatory effect, the Commission drew a distinction between compensation stemming from additional costs associated with the expiration of free time, as opposed to compensation to recover capital investment and container costs, stating:

It is important to specify however what this compensatory aspect of demurrage traditionally meant. To the extent demurrage had a compensatory aspect, it was to reimburse ocean carriers for costs incurred *after* free time expired – "costs" in this context meant *additional* costs associated with cargo remaining on a pier after free time in other words, demurrage and detention and not the mechanism by which ocean carriers recover all costs related to their equipment, and the Commission cannot assume that discharges are the primary method by which ocean carriers recover their capital investment and container costs as some commenters suggest.

85 FR 29651 (emphasis in original, internal citations omitted). The Commission explicitly stated that "demurrage and detention are not the mechanism by which ocean carriers recover all costs related to their equipment." *Id.* Further, Respondents argue that it would be "manifestly unfair" for Claimant not to pay the per diem charges since Respondents themselves paid their own equipment providers for the same period. However, Respondents do not state that the per diem charges at issue were pass through per diem charges from their providers for the days in question, and have not submitted any evidence indicating so.

Respondents also argue that Claimant's free time expired before May 23rd. According to Respondents:

Therefore, under the well-established principle of 'once on demurrage, always on demurrage,' as well as the UIIA, the Addendum and respondent's per diem rule, claimant's failure to return the equipment before May 23rd entitled respondent to the now disputed per diem. Claimant contractually assumed the risk of a late return of equipment by its BCO and it was that late return that caused its loss.

Answer, Pg. 8 - 10. Addressing similar contentions by commenters in the Final Rule, the Commission stated:

Ocean carriers remain subject, however, to section 41102(c) and its requirement that demurrage practices be tailored to meet their purposes - acting as financial incentives for cargo and equipment fluidity. If demurrage cannot act as an incentive for cargo and equipment fluidity because, for instance a marine terminal is closed for several days due to a storm, charging demurrage in such a situation, even if a container is already in demurrage, raises questions as to whether such demurrage practices are tailored to their intended purpose in accordance with section 41102(c).

85 FR at 29653. Continuing, the Commission stated:

The Commission therefore does not agree with . . . arguments that it is always a reasonable practice to charge detention and demurrage after free time regardless of cargo availability or the ability to return equipment. The rules and the principles therein apply to demurrage and detention practices regardless of whether containers at issue are "in demurrage" or "in detention". That is, in assessing the reasonableness of demurrage and detention practices the

Commission will consider the extent to which demurrage and attention are serving their intended primary purposes as financial incentives to promote freight fluidity, including how demurrage and attention are applied after free time has expired.

85 FR at 29653.

Respondents also note that Claimant signed their Preferred Trucker Agreement which incorporates the UIIA and the Evergreen Addendum in order to get business from Evergreen Line, and does not allege any fraud or coercion. Resp. Brief at 20. Respondents posit that it is not unjust or unreasonable that Claimant be bound by its contracts after it has received the benefit of performing the Evergreen Line moves. Resp. Brief at 20. Respondents' suggestion that a practice may not be challenged simply because it is contractually agreed upon lacks merit. "Ocean carriers and marine terminal operators (and ocean transportation intermediaries) do not have an unbound right to contract for whatever they want. They are limited by the prohibitions of the Shipping Act, one of which is section 41102(c)." 85 FR at 29648. Moreover, "most, shippers lack significant bargaining power as compared to ocean carriers. The same goes for intermediaries and truckers. Under such circumstances, there is reason for the Commission to carefully scrutinize arguments that shippers, intermediaries, and truckers have the ability meaningfully to negotiate contractual terms relating to demurrage and detention." 85 FR at 29648.

Additionally, Respondents note the statement in section 545.5(d) that policies implementing detention will be judged, among other things, by the sufficiency of applicable dispute resolution options and argue that in line with this provision the UIIA provides for a dispute resolution process that includes binding arbitration at no cost. Resp. Brief at 21 - 22. Notwithstanding this provision, dispute resolution mechanisms, including arbitritration clauses in contracts, do not supercede the Commission's authority over disputes inherently related to the Shipping Act. For example, in *Anchor Shipping*, where the administrative law judge dismissed a service contract dispute because the parties had arbitrated the issues in dispute, the Commission reversed that decision, finding that "[t]he arbitration clause in the parties' service contract does not outweigh the Commission's duty to protect the public by ensuring that service contracts are implemented in accordance with the Shipping Act." *Anchor Shipping*, 2006 FMC LEXIS 19 at *25. Since Claimant disputed the charges with Respondents, and Respondents declined to waive the charges, it is well within Claimant's right to pursue its dispute through a Commission proceeding.

In light of the foregoing analysis, I conclude that Claimant demonstrates that Respondents' imposition of the per diem charges when it was impossible for Claimant to return the equipment at issue was unjust and unreasonable.

### e. The Practice is the Proximate Cause of the Loss Suffered by Claimant

Claimant alleges that it was forced to pay the disputed per diem by Respondents and thus that it suffered a loss in the amount of the per diem it was forced to pay. Respondents note, however, that Claimant's supplemental information shows that Claimant billed the BCO for the disputed per diem at an amount higher than Respondents charged it for per diem. Answer to

28

Amended Cl. Pg. 12 at No. 28. Further, Respondents contend that Claimant cannot show damages or proximate causation because it was reimbursed for the $510 per diem by the BCO plus a markup of the per diem Claimant was charged. Respondents state that the mark up Claimant added to their charges should have covered any administrative cost Claimant incurred, plus a profit. Answer to Amended Cl. Pg. 11 at Nos. 24 - 25; Pg. 12 at No. 32; Resp. Brief Pg. 7 at Point 4. Respondents argue moreover, that it was Claimant's late return of the equipment that caused its loss. Answer Pg. 10.

The evidence shows that Claimant was indeed reimbursed by the BCO for the per diem charges (PF30), however, I find that forcing Claimant to pay the per diem charges when the Port of Savannah was closed, and Claimant could not return the equipment at issue, was the proximate cause of the loss suffered by Claimant. The BCO was not acting as Respondents' agent in reimbursing the charges to Claimant, thus a payment received from the BCO to cover that loss was not a reimbursement from Respondents. As discussed in more detail below, Claimant must return the BCO's payment to the BCO, to avoid a double recovery.

### F.    Damages

Clamaint seeks an order: 1) directing Respondents to reimburse the disputed per diem payments (Amended Cl. Pg. 3 at VI.); 2) directing Respondents not to charge per diem for weekends, holidays and during port closures when equipment cannot be returned to the port (Amended Cl. Pg. 3 at VI.); and 3) directing Respondents and "all marine lines" to bill per diem charges directly to their customers (Amended Cl. Pg. 2 at III(c) and Pg.4).

#### 1.    Reparations

Claimant requests reparations against Respondents in the amount of $510.00 for Claimant's payment of the per diem charges. Respondents note that the BCO has already refunded the per diem payments to Claimant. Respondents argue that Claimant is not entitled to a double recovery. Answer to Amended Cl. Pg. 11 at Nos. 24 – 25. However, Claimant states that it "would welcome an order to pass along recovery of damages to the BCO, but will do so, regardless." Cl. Brief Pg. 4

As previously noted, as the BCO was not acting as Respondents' agent when it reimbursed Claimant for the disputed per diem charges, Respondents cannot claim that payment. Accordingly, I find that Claimant is entitled to reparations in the amount of $510.00, the amount it paid for the unjust and unreasonable per diem charges from May 23rd to May 25th. However, to avoid a double recovery Claimant is directed to return to Yamaha the per diem payment it received from Yamaha. Claimant charged Yamaha per diem at a rate of $180 per day for the container and $24 per day for the chassis (PF 37), totaling $612.00 ($540 + $72). Thus, Claimant must return $612.00 to the BCO.

#### 2.    Claimant's Request for Cease and Desist Orders

Claimant requests that a cease and desist order be issued against Respondents prohibiting them from continuing to charge per diem when equipment cannot be returned. The Commission has found that a cease and desist order may be issued when there is a violation of the Shipping

Act. *See. e.g.. Bimsha Int'l v. Chief Cargo Svcs. Inc.*, 2013 FMC LEXIS 32 at \*22 - \*23 (FMC 2013) (stating that a cease and desist order may be issued when there is a violation of the Shipping Act). Respondents have been found to have violated section 41102(c), thus a cease and desist order is appropriate.

### a. Claimant's Request for Relief Ordering Respondents not to Charge Per Diem When Equipment Cannot be Returned is Granted

Claimant argues that directing Respondents not to charge per diem on days that a motor carrier has no ability to return empty containers such as weekends, holidays and other days that the port is closed is appropriate because "such practice serves as no motivating factor for increasing cargo fluidity, is not in harmony with the intent of the Shipping Act, and serves only to financially benefit the respondent." (Amended Cl. Pg. 3 at III(a).) Respondents argue that weekend and holiday billing of per diem provides added incentive for early return of equipment and that holding of equipment by BCOs is now a major problem. Resp. Brief Pg. 25.

Respondents also note that the payment of per diem is ultimately the responsibility of the BCO for whose benefit the transportation services and equipment are provided by ocean motor carriers. Respondents state that, therefore, if the BCO has not objected to the weekend and holiday charges, then the motor carrier has no standing to contest them. Resp. Brief Pg. 25. Respondents have argued that Claimant should be held to its contract to pay the per diem charges, and yet they now argue that Claimant has no standing to contest the charges as the charges are for the BCO's account. Respondents' arguments in this respect are contradictory.

Respondents also state that if ordered to cease and desist charging per diem for Saturdays, Sundays or holidays they would be prejudiced in that they would still be charged by their chassis providers for use of chassis on those days but would be unable to recover those charges from Claimant or any other trucker to whom Respondents provide a chassis. Amended Cl. Pg. 8 No. 15. The above order does not prevent Respondents from recovering per diem charges imposed by Respondents' chassis providers on days equipment are returned late.

Respondents argue in addition that a cease and desist order prohibiting them from charging per diem on weekend days and holidays would discriminate against them as Claimant provides carrier haulage for other VOCCs and utilizes chassis provided by independent equipment providers who do not allow free time and charge equal or higher chassis usage charges than Respondents' post-free time per diem charges. Respondents state that the order would prevent it from charging per diem for weekend days and holidays that other independent equipment provider would continue to charge. Amended Cl. Pg. 8 No. 15. It is clear from the evidence that Respondents' practice of charging per diem when a container cannot be returned is based on a business decision to allocate losses resulting from a port closure, not because of an intent to do wrong. Resp. Brief Pg. 20. Also, Respondents' practice to provide the use of chassis to their preferred truckers at no charge is a benefit that is not extended by every equipment provider. However, the Commission has found that charging per diem when a trucker is unable to return the equipment because the port is closed weighs heavily in favor of a finding of unreasonableness, because if an ocean carrier directs a trucker to return equipment to a particular terminal, and that terminal refuses to accept the equipment, no amount of detention can incentivize its return. 85 FR at 29655. Since this practice is found to be unjust and unreasonable

30

and Respondents evidence an intention to continue this practice in accordance with their policy, I find that it is appropriate to issue an order against this practice in order to forestall future possible violations. *See Bimsha Int'l.*, 2013 FMC LEXIS 32 at *22 - *23 (finding that a cease and desist order may be issued "to protect the shipping public from future possible violations"). In order to remedy the violation found, cease and desist orders should "generally mirror[] the violations committed coupled with the statutory language." *Bimsha Int'l.*, 2013 FMC LEXIS 32 at *24 (citing *Universal Logistic Forwarding Co. Ltd., - Possible Violations of Section 10(a)(1) and 10(b)(1) of the Shipping Act of 1984*, 29 S.R.R. 474, 476 (FMC 2002)).

Accordingly, Respondents are ordered absent extenuating circumstances, to cease and desist from imposing per diem charges when imposition of per diem charges does not serve its incentivizing purposes, such as when empty equipment cannot be returned on weekends, holidays, and port closures. This order applies the language used in 46 C.F.R. § 545.5(c)(ii) and the Commission's Interpretive Rule on Demurrage and Detention Under the Shipping Act. This order does not apply to situations when it was possible to return equipment on the day the per diem was charged.

### b. Claimant's Request to Order Respondents to bill Per Diem Charges Directly to Customers is Denied

As noted, Claimant also asks that Respondents and "all marine lines[8]" be directed to bill per diem charges directly to their customers. Amended Cl. Pg. 2 at III(c) and Pg. 4. Claimant argues that Respondents negotiate per diem free time contracts directly with the beneficial cargo owner and thus that the beneficial cargo owner would be better suited to audit and process any applicable per diem invoices. Amended Cl. Pg. 4. "Claimant asserts that respondent's practice of funneling discharges through the claimant only places additional financial and administrative burden on the Claimant." Amended Cl. Pg. 4. Claimant opines:

> this results in the claimant being a mere clearinghouse for the respondent, where respondent can leverage interchange rights if invoices are not processed timely. In doing so, additional financial and administrative burdens are placed on the claimant, where the claimant's core responsibility is the safe and timely delivery of cargo-NOT to serve as a billing service for the respondent.

Cl. Brief Pg. 2. Claimant points to the Commission's statement in the Final Rule that ocean carriers should bill their customers rather than imposing charges contractually owed by cargo interest on third parties. Cl. Brief Pg. 2 (citing to 85 FR at 29661).

Respondents note that they do not restrict motor carriers .from using non-Evergreen chassis when picking up Evergreen cargo. Answer to Amended Cl. Pg. 8 at No. 21. Respondents also point out that Claimant billed the BCO 20% to 60% more than Respondents' invoiced charges and argue that at least a portion of the mark up by Claimant represents a profit to Claimant in addition to offsetting any administrative costs or burden alleged by Claimant. Resp. Brief Pg. 18. In addition, Respondents contend that Claimant has made no factual showing that

---

[8] Orders issued in this decision can only apply to Respondents because Claimant did not include any other marine line as a respondent in this proceeding.

the billing arrangement is an administrative or financial burden, or that Claimant has been forced to absorb charges that were the responsibility of a BCO or to lose BCO business. Respondents argue that to the contrary, Claimant's mark up of the per diem charges to its customers suggests that Claimant "comes out ahead" of the billing arrangement. Resp. Brief Pg. 24. Respondents argue that the billing arrangement makes sense for two reasons: First, that the Evergreen Line equipment is being interchanged to a motor carrier rather than the BCO itself; and secondly, the billing arrangement gives the motor carrier an incentive to see that the equipment is promptly returned. Resp. Brief Pg. 24 - 25.

During the rulemaking process, the Commission received "significant comments" on the issue of billing demurrage and detention directly to the Cargo interests but ultimately chose not to include this billing model in the rule or to adopt it as a part of the reasonableness analysis under section 41102(c). *See* 85 FR at 29661. The Commission noted regarding ocean carriers' billing arrangements:

> As for the argument that ocean carriers billing practices are unreasonable because carrier bills of lading, tariffs, service contracts, or the UIA assigned responsibility for charges to the wrong parties, the Commission believes that whatever the merits of these arguments, they are better addressed in the context of specific fact patterns rather than in this interpretive rule, the purpose of which is to provide general guidance about how the Commission will apply section 41102(c).

85 FR 29661.

I find in light of the fact that Claimant agreed to be billed for the per diem charges and appears to have profited from the billing arrangement, that the evidence does not support its argument that the billing arrangement poses a hardship and a burden to it. Accordingly, Claimant's request that Respondents be made to bill the per diem directly to beneficial cargo owners is denied.

### G.     Conclusion

Claimant, TCW, Inc. has proven its claim that Respondents Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement's imposition of per diem charges on days when Claimant could not return equipment to the port because the port was closed, constitutes a violation of 46 U.S.C. § 41102(c). Accordingly, reparations in the amount of $510.00 plus interest are granted to Claimant for its payment of the per diem charges to Respondents on the days in question. Claimant paid the per diem charges on June 6, 2020, therefore, interest on the reparations award will be calculated from June 6, 2020, when this decision becomes administratively final. In addition, Respondents are ordered absent extenuating circumstances, to cease and desist from imposing per diem charges when imposition of per diem charges does not serve its incentivizing purposes, such as when empty equipment cannot be returned on weekends, holidays, and port closures. Finally, Claimant's request that Respondents be ordered to invoice per diem charges directly to beneficial cargo owners is denied.

IV.     **ORDER.**

Upon consideration of the evidence of record, arguments of the parties, and the foregoing findings and conclusions that Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement violated the Shipping Act, 46 U.S.C. § 41102(c), it is hereby

**ORDERED** that TCW, Inc.'s claim for reparations against Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement be **GRANTED**. It is

**FURTHER ORDERED** that Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement pay reparations to TCW, Inc. in the amount of $510.00 with interest running on the reparation award from June 6, 2020. It is

**FURTHER ORDERED** that absent extenuating circumstances Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement cease and desist from imposing per diem charges when imposition of per diem charges does not serve its incentivizing purposes, such as when empty equipment cannot be returned on weekends, holidays, and port closures. It is

**FURTHER ORDERED** that TCW Inc.'s request for an order requiring Evergreen Shipping Agency (America) Corporation and Evergreen Line Joint Service Agreement to invoice per diem directly to beneficial cargo owners be **DENIED**.

_____
Theresa Dike
Small Claims Officer

33