No. 23-1052
_____

IN THE
United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

EVERGREEN SHIPPING AGENCY (AMERICA) CORP. AND EVERGREEN LINE JOINT
SERVICE AGREEMENT
*Petitioners,*

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF AMERICA,
*Respondents.*
_____

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL MARITIME COMMISSION

_____

**BRIEF FOR RESPONDENTS FEDERAL MARITIME COMMISSION AND
UNITED STATES OF AMERICA**

_____

ROBERT B. NICHOLSON
ROBERT J. WIGGERS
*Attorneys*
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20530-0001
PHONE: (202) 514-2460
robert.nicholson@usdoj.gov
robert.wiggers@usdoj.gov

PHILLIP "CHRIS" HUGHEY
*General Counsel*
PAUL A. SCHOFIELD
KATHRYN C. BUETTNER
*Attorney-Advisors*
FEDERAL MARITIME
COMMISSION
800 N. CAPITOL ST., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
phughey@fmc.gov
pschofield@fmc.gov
kbuettner@fmc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### Parties and Amici

The parties to the proceeding before the Federal Maritime Commission were TCW, Inc., as Complainant, and Evergreen Shipping Agency (America) Corp. and Evergreen Line Joint Service Agreement as Respondents.

The parties to this petition for review are Evergreen Shipping Agency (America) Corp. and Evergreen Line Joint Service Agreement, as Petitioners, and the Federal Maritime Commission and the United States of America as Respondents. The World Shipping Council and National Association of Waterfront Employers have submitted a brief as amici curiae.

### Ruling Under Review

The ruling under review is the Federal Maritime Commission's "Order Affirming Initial Decision" issued on December 29, 2022, *TCW, Inc., v. Evergreen Shipping Agency (AM.) Corp. & Evergreen Line Joint Service Agreement*, FMC Docket No. 1966-I, 2022 WL 18068977 (FMC Dec. 29, 2022).

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ...... ii

TABLE OF AUTHORITIES .................................................................iv

STATEMENT OF JURISDICTION .....................................................1

STATEMENT OF THE ISSUES PRESENTED ....................................1

RELEVANT STATUTORY AND REGULATORY PROVISIONS.................1

STATEMENT OF THE CASE...............................................................1

    I.    The Applicable Legal Framework ........................................1

    II.    The Shipment at Issue ..........................................................3

    III.    Proceedings before the Commission....................................4

SUMMARY OF ARGUMENT ..............................................................5

ARGUMENT ........................................................................................7

    I.    Standard of Review ...............................................................8

    II.    In Finding Evergreen Charging Per Diem on Weekends, Holidays, and Temporary Closures Was Unjust and Unreasonable Under § 41102(c), the Commission followed the Interpretive Rule, Considered the Incentive Principle (As Required), and Other Factors ..................................................................................9

    III.    The Commission Correctly Applied the Incentive Principle ........14

CONCLUSION...................................................................................18

CERTIFICATE OF SERVICE ...........................................................20

# TABLE OF AUTHORITIES

## CASES

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619 (1966)......................................12

*Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 843-845 (1984)….8

*FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, (Apr. 1, 2021)…………………………………………………………………… 8

## STATUTES

28 U.S.C. § 2342(3)(b) …………………………………………………………1

46 U.S.C. §§ 40101-41310 ..................................................................................1

46 U.S.C. § 41102(c) ...............................................................1, 3, 7, 8, 14

## REGULATIONS

46 C.F.R. § 545.4(d) ..............................................................................2

46 C.F.R. § 545.5 ..................................2, 6, 7, 9, 10, 14, 18

46 C.F.R. § 545(c)(1)…………………………………………….2, 9, 10, 14

46 C.F.R. § 545.5(c)(2)(ii)…………………………………….....2, 6, 15, 17

46 C.F.R. § 545.5(c)(2)(iii)…………………………………….…6, 10

46 C.F.R. § 545.5(c)(2)(iv)……………………………………....6

46 C.F.R. § 545.5(d) ..............................................................................2,10

46 C.F.R. § 545.5(e) …………………………………………………...10

46 C.F.R § 545.5(f)…………………………………………………2, 6, 9

## PUBLICATIONS

85 Fed. Reg. 29638, Interpretive Rule on Detention and Demurrage Under the Shipping Act (May 18, 2020)………………………………………..…7, 10

85 Fed. Reg. 29638, 29639 …………………………………………………...2, 7

85 Fed. Reg. 29638, 29652 ...................................................................................15

85 Fed. Reg. 29638, 29655 ...................................................................................15

85 Fed. Reg. 29638, 29653 ...................................................................................17

85 Fed. Reg. 29638, 29641 ...................................................................................10

85 Fed. Reg. 29638, 29651 …………………………………….…3, 7, 8,13

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| **Commission** | Federal Maritime Commission |
| **Evergreen** | Evergreen Shipping Agency (America) Corp., and Evergreen Line Joint Service Agreement |
| **Initial Decision** | Initial Decision of Small Claims Officer |
| **Order** | Order Affirming Initial Decision of Small Claims Officer, FMC Docket No. 1966(I) |
| **Final Rule** | Interpretive Rule on Demurrage and Detention Under the Shipping Act, 85 Fed. Reg. 29638 (issued May 18, 2020) |
| **TCW, Inc.** | TCW |
| **Yamaha Motor Company, Ltd.** | Yamaha |
| **Evergreen Brief** | Petitioners' Corrected Opening Brief |
| **BCO** | Beneficial Cargo Owner |

## STATEMENT OF JURISDICTION

The Federal Maritime Commission adjudicates complaints alleging violations of the Shipping Act, 46 U.S.C. § 40101 et seq. In this complaint proceeding involving an alleged violation of the Act, the Commission had subject matter jurisdiction over the complaint under 46 U.S.C. § 41301. This Court has jurisdiction over the timely petition for judicial review under 28 U.S.C. § 2342(3)(B).

## STATEMENT OF THE ISSUES PRESENTED

Whether the Commission properly held ocean common carrier Evergreen to have violated the Act by assessing on motor carrier TCW equipment charges (also known as late fee, per diem, or detention) for not returning the equipment to Evergreen's marine terminal on days when return was impossible because the terminal was closed.

## RELEVANT STATUTORY AND REGULATORY PROVISIONS

Pertinent statutes and regulations are provided in the addendum to this brief.

## STATEMENT OF THE CASE

### I.     The Applicable Legal Framework

The Shipping Act (46 U.S.C. § 41102(c)) requires ocean common carriers like Evergreen to use "just and reasonable" practices in the handling of shippers' property. Put another way, practices that are "unjust" or "unreasonable" violate the

Shipping Act. *See* 46 C.F.R. § 545.4(d). To help the shipping public understand the Commission's reading of these broad terms in the context of demurrage and detention, in 2020 it issued the interpretive regulation at issue in this case. 46 C.F.R. § 545.5. The agency said that it "will consider" the extent to which demurrage and detention serves its primary purpose: a financial incentive to freight fluidity. 46 C.F.R. § 545(c)(1). This is the so-called incentive principle. More specifically, the agency advised that, absent extenuating circumstances, imposition of fees for time "when empty containers cannot be returned" is "likely to be found unreasonable." 46 C.F.R. § 545.5(c)(2)(ii). The Commission added, however, that "[n]othing in this rule precludes the Commission from considering other factors, arguments, and evidence in addition to those specifically listed in this rule." 46 C.F.R. § 545.5(f). All that said, the agency left development and application of these interpretive principles of reasonableness to individual complaint proceedings.

The Commission clearly understood that 46 C.F.R. § 545.5 would provide guidance, not a "bright line," to the shipping industry. As the agency explained in the rulemaking, "the rule is not intended to, and cannot, solve every demurrage and detention problem or quell all disputes. Rather, it reflects the Commission's finding that all segments of the industry will benefit from advance notice of how the Commission will approach the 'reasonableness' inquiry under section 41102(c)." 85 Fed. Reg. at 29639. The Commission also set forth clearly what it

means by the "incentive principle," and how that principle is grounded in longstanding agency precedent. As the Commission explained, "because the purpose of demurrage and detention are to incentivize cargo movement, it will consider in the reasonableness analysis under section 41102(c) the extent to which demurrage and detention are serving their intended purposes as financial incentives to promote freight fluidity." 85 Fed. Reg. at 29651.

## II.    The Shipment at Issue

Yamaha engaged Evergreen to transport a motorcycle by vessel from its factory in Japan to the Port of Savannah ("Port"), and then by TCW truck – using an Evergreen container and chassis[1] (the equipment) -- on to Yamaha's facility in Newnan, Georgia. Initial Decision at 1, ¶ 2. TCW had four days and twenty-one days, respectively, in which to return the chassis and the container to the Port, after which late fees applied. Initial Decision at 9, ¶ 22.

TCW picked up the equipment at the Port on April 28, 2020, and returned it on May 26, 2020, the Tuesday after Memorial Day weekend. *Id*. at 2, ¶ 3.  The return had been delayed by, among other things, a covid-related closure at Yamaha's Newnan plant and by the closure of the Port of Savannah over the Memorial Day weekend. Upon the late return of the equipment, Evergreen imposed a fee of $1,490, which included $510 for the three days of Port closure.

---

[1] A chassis is the wheeled platform on which the container sits.

3

TCW asked Evergreen to waive the $510 part of the late fee, because it was impossible to return the equipment when the Port was closed. Evergreen, however, refused, and TCW, after paying the $510, went to the Commission for relief.

### III.    Proceedings before the Commission

TCW complained about the $510 late fee to the Commission under its simplified small claims program – and won. Initial Decision at 33. The Small Claims Officer found that TCW's return of the equipment to Savannah had been delayed by the covid-related closure of the Yamaha plant in Newnan. She further found that on the three days of Memorial Day weekend for which the disputed late fee had been imposed, the Port of Savannah was closed, and thus that it was impossible for TCW to return the equipment to Evergreen on those days. Under the circumstances the Small Claims Officer concluded that imposition of the $510 late fee was unjust and unreasonable in violation of the Shipping Act, and she ordered Evergreen to pay TCW $510, plus accrued interest. The Small Claims Officer also issued a cease and desist order that barred Evergreen "absent extenuating circumstances" from "imposing per diem charges when imposition of per diem charges does not serve its incentivizing purposes, such as when empty equipment cannot be returned on weekends, holidays, and port closures." Initial Decision at 32-33.

4

The Commission sua sponte decided to review the decision of the Small Claims Officer. It ordered the parties to submit supplemental briefs and invited interested outsiders to file amicus briefs. Order for Supplemental Briefing (April 26, 2021). After extensive briefing by the parties and shipping industry amici, the Commission adopted the Initial Decision of the Small Claims Officer in its entirety and affirmed. Order at 2. Given the now-adopted findings concerning both the delay at the Yamaha plant and also the closure of the Port which made return of the equipment impossible during the Memorial Day long weekend, the Commission held that imposition of the $510 late fee could not incentivize the impossible and thus was unjust and unreasonable. The Commission accordingly ordered return to TCW of the $510, plus $11.62 in interest, and repeated the cease and desist order.

## SUMMARY OF ARGUMENT

Evergreen's argument that the Commission's 2020 interpretive rule requires the agency to give equal consideration to factors other than the incentive principle is at odds with the plain language of the rule.  The rule requires it to consider only one factor: the incentive principle. "In assessing the reasonableness of demurrage and detention practices and regulations, the Commission *will consider* the extent to which [they] . . . are serving their intended primary purposes as financial incentives to promote freight fluidity." 46 C.F.R. § 545.5(c)(1). (Emphasis added.) By contrast, considerations other than the incentive principle are matters that the

5

Commission "*may consider*," but the burden is on the parties to show that they are material to the issue of reasonableness in any particular case. *See* 46 C.F.R. § 545.5(c)(2)(iii) and (iv), (d), (e), and (f). (Emphasis added.) Thus, Evergreen's argument that the rule requires the Commission to give equal consideration to factors other than the incentive principle is at odds with the plain language of the rule.

In fact, the agency did consider other factors, as it may, but it found them not to be controlling. In this regard, it faithfully followed another provision of the rule, which says: "Absent extenuating circumstances," imposition of lateness fees or penalties "such as when empty containers cannot be returned, are likely to be found unreasonable." 46 C.F.R. § 545.5(c)(2)(ii). When Evergreen imposed fees in just this situation, it was on notice that, absent extenuating circumstances, its action would "likely to be found unreasonable." It failed to show extenuating circumstances, and the Commission predictably found its conduct unreasonable.

Finally, the Commission did not establish a bright-line rule of per se unlawful conduct in this adjudicatory proceeding. Instead, it applied the guidance it had issued in 46 C.F.R. § 545.5 to the facts of the case and concluded that Evergreen had violated the Shipping Act.

## ARGUMENT

The charging of detention and demurrage fees is a carrier practice relating to the receipt and delivery of property that must be "just and reasonable" under 46 U.S.C. § 41102(c). The Commission's interpretive rule was the product of an intensive examination of that very subject. It began with a nine-month Fact Finding Investigation[2] followed by a notice and comment rulemaking proceeding. Notice of Proposed Rulemaking, *Interpretive Rule on Demurrage and Detention Under the Shipping Act*, 84 Fed. Reg. 48850 (Sept. 17, 2019). Over one hundred commenters, including the Amici here, participated in the rulemaking. Final Rule, *Interpretive Rule on Demurrage and Detention Under the Shipping Act*, 85 Fed. Reg. 29638, 29639 (May 18, 2020). The Interpretive Rule, codified at 46 C.F.R. § 545.5, is the end product of that process, and in publishing the Final Rule the Commission provided a detailed explanation of why it considers the financial incentive to promote freight fluidity as the primary purpose of such charges. Final Rule, 85 Fed. Reg. at 29651-52. Evergreen does not actually disagree on that point.[3] Its argument is really that it has a better way to provide that incentive. The

---

[2] FF No. 28 - Conditions and Practices Relating to Detention, Demurrage, and Free Time in International Oceanborne Commerce. *Available at* https://www2.fmc.gov/readingroom/proceeding/FF%20No.%2028/.

[3] Evergreen Brief at 7 and Brief Amici Curiae of the World Shipping Council and National Association of Waterfront Employers at 24, refer to the fact that

question for the Court, however, is not whether Evergreen's argument is reasonable, but whether the Commission's holding is unreasonable. Since the Commission's decision is plainly reasonable, it must be upheld.

## I.     <u>Standard of Review</u>

The Commission ruled that Evergreen's demurrage practice during port closures was not "just and reasonable" as required by 46 U.S.C. § 41102(c). To the extent that Evergreen contends that the Commission misinterpreted this broad statutory language, judicial review follows the deferential standard of the second branch of *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 843-845 (1984). To the extent that Evergreen contends that the Commission in its interpretive rule promised to adjudicate demurrage practices one way but did so here in a contrary way, judicial review asks whether the agency's conduct is arbitrary and capricious. Under this deferential standard, the court will uphold the agency so long as its action is "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, (Apr. 1, 2021).

---

demurrage and detention charges also play a compensatory role. The Commission has acknowledged that but found that their penal role predominates and the carriers pay for the equipment through other mechanisms. Final Rule at 29651. It should also be noted that carrier rates are not regulated. The Shipping Act relies mostly on the restrictions on anticompetitive agreements (46 U.S.C. §§ 40301-40307) to maintain reasonable rates. The only issue here is when the carriers can charge, not how much.

## II.    In Finding Evergreen Charging Per Diem on Weekends, Holidays, and Temporary Closures Was Unjust and Unreasonable Under § 41102(c), the Commission followed the Interpretive Rule, Considered the Incentive Principle (As Required), and Other Factors

To find a violation, the statute requires that the practice be unjust or unreasonable. In 46 C.F.R. § 545.5, the Commission explains how, in individual cases, it will assess the reasonableness of demurrage and detention charges and states that the Commission *will* consider the extent to which they are serving their intended primary incentivizing purpose. 46 C.F.R. § 545.5(c)(1). With this unambiguous usage of the word "will," the agency has made very clear that the one aspect of the rule it will always analyze in a case like this is the incentive principle. "[T]he Commission will consider the extent to which demurrage and detention are serving their intended primary purposes as financial incentives to promote freight fluidity." *Id*.

Evergreen argues that this was the only factor the Commission considered, and contends that this was reversible error because, it says, the Commission was required to consider "all factors, arguments, and evidence in addition to those specifically listed." Evergreen Brief at 31. Evergreen contends that "the Interpretive Rule states that the Commission *must* consider *all* factors, arguments, and evidence in addition to those specifically listed." *Id*. (Emphasis added.)

However, the actual text of 46 C.F.R § 545.5(f) is neither as rigid nor as broad as Evergreen depicts it: "Nothing in this rule precludes the Commission

9

from considering factors, arguments, and evidence in addition to those specifically listed in this rule." There is a marked difference between stating that the Commission *must* do something, as Evergreen argues, and that it is not precluded from doing so, as the actual rule text makes clear. Moreover, every other paragraph of § 545.5, apart from the section on the incentive principle, uses the words "may consider" or "may further consider," in contrast to the incentive principle's use of the phrase "will consider." *Compare* 46 C.F.R. § 545.5(c)(1) *with* 46 C.F.R. §§ 545.5(c)(2)(iii), 545.5(d), and 545.5(e). *See also* 85 Fed. Reg. 29638, 29641 (May 18, 2020) ("[A]side from the general incentive principle, which the proposed rule indicated the Commission *will* consider, the particular applications of that principle and other factors listed are things the Commission *may* consider.") (Emphasis in original.)

The Commission, in any event, did consider numerous other factors, arguments, and evidence in this case. Indeed, Evergreen lists numerous facts that were considered by the agency. Evergreen Brief at 32-33. As explained below, the Commission sufficiently analyzed these facts in reaching its decision in this case.

## A. Notice of the Closure of the Port of Savannah

Evergreen argues that the Commission did not consider that TCW had advance notice of the Port of Savannah closure. Evergreen Brief at 36-38. However, this fact was considered as part of the Commission's overall analysis and

adoption of the Initial Decision "in its entirety." Order at 2. In response to

Evergreen's argument about per diem and "once-in-demurrage, always-in-

demurrage," the Small Claims Officer wrote: "In addition, Respondents assert that

Claimant was well aware the port would be closed on Saturday, May 23rd and that

Claimant's free time expired before May 23rd." The Small Claims Officer noted

that in their Answer Respondents had asserted that "[t]herefore, under the well-

established principle of 'Once on demurrage, always on demurrage,' as well as the

UIIA [Uniform Intermodal Interchange and Facilities Access Agreement], the

Addendum and respondent's per diem rule, claimant's failure to return the

equipment before May 23rd entitled respondent to the now disputed per diem."

Initial Decision at 7. Simply because neither the Small Claims Officer nor the

Commission was persuaded that this fact should outweigh the analysis of the

incentivizing principle does not mean it was not considered.

Evergreen also incorrectly argues that knowledge of a port closure in

advance was an "extenuating circumstance" that afforded TCW "every opportunity

to change its own behavior to avoid charges." Evergreen Brief at 34. Evergreen,

however, fails to explain what opportunities TCW failed to act upon. Most

importantly, Evergreen fails to refute the facts presented by TCW and accepted by

the Small Claims Officer showing that TCW could not, regardless of incentive,

return the equipment before the closure. Initial Decision at 25-26. The evidence on

which the Commission relied was substantial and unrefuted, so its findings must be accepted. *See, e.g., Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619 (1966).

### B. The Cause of the Delay

Similarly, Evergreen complains that the Commission ignored that it was not the cause of the delay. Evergreen Brief at 39. In fact, the Small Claims Officer clearly considered the reasoning for the delay: "Claimant explains that it was unable to timely return the equipment in question despite its 'best efforts to work with the BCO [beneficial cargo owner] to ensure that the cargo and equipment . . . moved as fluidly as possible' because the BCO's plant was shut down due to COVID-19." Initial Decision at 25. The Small Claims Officer also considered that the Port of Savannah was closed from May 23rd to May 26th due to lower volumes on Saturdays and that May 25th was a Memorial Day holiday. *Id*. The Small Claims Officer, taking these facts into consideration, found that "the per diem charges imposed by Respondents from May 23rd to May 25th were unreasonable because they could not have incentivized cargo movement." *Id*. at 25-26. Evergreen argues that the Commission needs to explain why, if the delay was not its fault, Evergreen should not be permitted to assess detention charges on port closure days. Evergreen Brief at 39. However, the Small Claims Officer answered that question: the charges could not have incentivized cargo movement. Initial Decision at 25-26.

Evergreen has not explained why its lack of fault should be decisive here.  If the charges were primarily compensation for use of the equipment, there might be an argument that the carriers should be compensated where the losses were not their fault.  The Commission considered that issue in its rulemaking, however, and found that the charges are more in the nature of penalties, and therefore should not be assessed when they cannot serve their incentive function.  85 Fed. Reg. at 29651-52.  Evergreen's lack of fault plays no role in that context.

### C. Contractual Terms

Evergreen also argues that the Commission ignored the fact that TCW agreed to contractual terms about per diem charges. Evergreen Brief at 41. The Commission, however, did consider the contractual terms between TCW and Evergreen. It found that the evidence established that imposition of the disputed per diem charged by Evergreen was "occurring on a normal, customary, and continuous" basis and was a part of Evergreen's normal business practices. Initial Decision at 22. The Order noted that Evergreen had specifically stated in its reply brief, "Evergreen Parties' only intent is to bill per diem allowed by the PTA [Preferred Trucker Agreement] that Claimant agreed to, which includes the PTA's requirement to be a signatory to the UIIA [Uniform Intermodal Interchange and Facilities Access Agreement] addendum which mandates the alleged unreasonable conduct." Order at 8, citing Resp. Reply Brief at 2. The Commission analyzed the

contractual terms and found that the content of the relevant addendum was such that it mandated the payment of per diem on days when the port was closed, and that imposition of the disputed per diem charged by Evergreen was part of its business practice. The Commission determined, however, that the agency retains jurisdiction to determine whether these terms contravene the "just and reasonable" requirements of 46 U.S.C. § 41102(c). Order at 6. Ultimately, the Commission found that the charges were not just and reasonable, regardless of the contractual terms. Although the conclusion reached by the Commission was not what Evergreen wanted, this does not mean the relevant facts were not analyzed by the agency.

## III.     The Commission Correctly Applied the Incentive Principle

In 46 C.F.R. § 545.5, the Commission set forth how it will assess the reasonableness of demurrage and detention charges and stated that the Commission *will* consider the extent to which such charges are serving their intended primary incentivizing purpose. 46 C.F.R. § 545.5(c)(1). The one aspect of the rule that the Commission is required to analyze is the incentive principle, and the agency did so clearly and deliberately. *See* Order at 9 –11.

The agency's interpretive rule provides specific clarity with respect to the return of empty containers: "[a]bsent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its

incentivizing purposes, *such as when empty containers cannot be returned*, are likely to be found unreasonable." 46 C.F.R. § 545.5(c)(2)(ii) (Emphasis added.) During the rulemaking, the Commission clearly articulated that detention charges cannot incentivize the return of a container when a terminal refuses to accept the container. 85 Fed. Reg. at 29655. In this case, there was nothing TCW could have done to return the container between May 23-25, 2020, because the port was closed and thus not receiving empty containers. The per diem charges were unreasonable because the port was closed on those days: it was impossible for TCW to return the equipment, and for this reason, the charges could not have incentivized cargo movement.

The Commission previously considered and rejected the argument that not charging detention during a port closure would disincentivize the return of a container *before* the closure went into effect. *Cf.* Evergreen Brief at 44. This argument was discussed, and refuted, during the rulemaking process establishing the interpretive rule. 85 Fed. Reg. at 29652. As the Commission explained at that time, this disincentivizing argument neglects the commercial incentives to returning empty containers and the opposite position, that the ability to collect per diem, even if it is impossible for a truck to return equipment, might disincentivize common carriers and marine terminal operators from acting efficiently. *Id*. Although Evergreen understandably focuses solely on its own financial

15

motivations, the Commission must consider the broader context of freight fluidity throughout the supply chain -- such as potential logjams if there is a rush to get equipment in before a weekend closure.

Evergreen argues "that knowing in advance that the terminal will be closed and charges will accrue on such day most emphatically provides an incentive to return the equipment before the closed day." Evergreen Brief at 44-45. Ironically, in this matter, as Evergreen acknowledges (Evergreen Brief at 34, 45), TCW still incurred substantial fees, of which the fees accrued on the port closure dates were only a small portion. That is to say, while the Commission ordered Evergreen to refund $510.00 in charges, that was only about one-third of the $1490.00 total amount Evergreen had invoiced to TCW and TCW had paid. Regardless of any incentive to return the equipment, TCW simply was not able to do so before the port closure. As the Initial Decision stated, "TCW picked up the equipment in question on April 28, 2020, and by the time it returned them on May 26, 2020, their allotted free time had expired (May 19, 2020, for the container and May 4, 2020, for the chassis) . . . Evergreen-Agent then invoiced TCW for per diem charges for the equipment in the amount of $1,050 for 7 days of per diem for the container and $440.00 for 22 days of per diem for the chassis . . . TCW disputed the charges on the basis that it should not have been charged per diem from May 23, 2020, to May 26, 2020, totaling $510.00, because the Port of Savannah was

16

closed on those days, making TCW unable to return the equipment to the port, but Respondents declined to waive the charges." Initial Decision at 2.

The Order also discussed whether TCW could have returned the container prior to the May 23-25, 2020, closure and noted that the container was already in per diem status when the closure took place. Order at 10. The Order explained that a "once-in-demurrage, always-in-demurrage" principle was addressed at length during the rulemaking process, with arguments both for and against the principle. The Order cited the following language in the rule, stating that the Commission "does not agree with some commenters' arguments that it is always a reasonable practice to charge detention and demurrage after free time regardless of cargo availability or the ability to return equipment." Order at 11 *citing* 85 Fed. Reg. at 29653.

Finally, there is no merit to Evergreen's claim that the Commission has established a "Bright Line" rule of per se unlawfulness. This is essentially a restatement of arguments already made and answered. *See* pages 8-14 above.  Suffice it to add here that the rule dealing expressly with the situation of fees for time "when empty containers cannot be returned" makes clear that if the carrier has "extenuating circumstances" for the fees, they will not be found unjust or unreasonable.  46 C.F.R. § 545.5(c)(2)(ii).  Evergreen simply failed to show any extenuating circumstances.

# CONCLUSION

Evergreen's arguments show little consideration for the specific text of 46 C.F.R. §545.5. In its adjudicatory proceeding, the Commission consistently applied the guidance set forth in the rule and carefully considered all the evidence and facts that were brought before it. There was no error by the Commission, simply the well-reasoned and straightforward application of a rule that Evergreen finds contrary to its own interests. The Court should deny Evergreen's petition for review.

Respectfully submitted,

/s/ PAUL A. SCHOFIELD

ROBERT B. NICHOLSON
ROBERT J. WIGGERS
Attorneys
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVE., N.W.
WASHINGTON, D.C. 20530-0001
PHONE: (202) 514-2460
robert.nicholson@usdoj.gov
robert.wiggers@usdoj.gov

PHILLIP "CHRIS" HUGHEY
General Counsel
PAUL A. SCHOFIELD
KATHRYN C. BUETTNER
Attorney-Advisors
FEDERAL MARITIME
COMMISSION
800 N. CAPITOL ST., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
phughey@fmc.gov
pschofield@fmc.gov
kbuettner@fmc.gov

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I HEREBY CERTIFY that the foregoing brief complies with the type-volume limitation and type style requirements of Fed. R. App. P. 32 and contains 4,059 words and was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

/s/ Paul A. Schofield
PAUL A. SCHOFIELD
*Attorney-Advisor*
FEDERAL MARITIME
COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
pschofield@fmc.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the

Clerk of the Court on this 28th day of June, 2023, using the CM/ECF system which

will send notification of such filing to the parties at the email addresses listed below:

Robert K. Magovern (#50634)
Cozen O'Connor
1200 19th Street, N.W.
Washington, DC 20036
(202) 463-2539
rmagovern@cozen.com
*Counsel for Petitioners Evergreen Shipping Agency (America) Corp. and*
*Evergreen Line Joint Service Agreement*

Robert B. Nicholson
Robert J. Wiggers
U.S. Department of Justice, Antitrust Division, Appellate Section
950 Pennsylvania Avenue, N.W., Room 3224, Washington, D.C. 20530
Email: robert.nicholson@usdoj.gov; robert.wiggers@usdoj.gov
*Counsel for Respondent United States of America*

/s/ Paul A. Schofield
PAUL A. SCHOFIELD
*Attorney-Advisor*
FEDERAL MARITIME
COMMISSION
800 N. Capitol St., N.W.
WASHINGTON, D.C. 20573
PHONE: (202) 523-5740
pschofield@fmc.gov

# ADDENDUM

**Section 41102(c) of title 46 of the U.S. Code**:

> A common carrier, marine terminal operator, or ocean transportation intermediary may not fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property.

**§ 545.5 Interpretation of Shipping Act of 1984 - Unjust and unreasonable practices with respect to demurrage and detention.**

   **(a) Purpose**. The purpose of this rule is to provide guidance about how the Commission will interpret 46 U.S.C. 41102(c) and § 545.4(d) in the context of demurrage and detention.

   **(b) Applicability and scope**. This rule applies to practices and regulations relating to demurrage and detention for containerized cargo. For purposes of this rule, the terms demurrage and detention encompass any charges, including "per diem," assessed by ocean common carriers, marine terminal operators, or ocean transportation intermediaries ("regulated entities") related to the use of marine terminal space (e.g., land) or shipping containers, not including freight charges.

   **(c) Incentive principle** –

**(1) General**. In assessing the reasonableness of demurrage and detention practices and regulations, the Commission will consider the extent to which demurrage and detention are serving their intended primary purposes as financial incentives to promote freight fluidity.

**(2) Particular applications of incentive principle** –

**(i) Cargo availability**. The Commission may consider in the reasonableness analysis the extent to which demurrage practices and regulations relate demurrage or free time to cargo availability for retrieval.

**(ii) Empty container return**. Absent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, are likely to be found unreasonable.

**(iii) Notice of cargo availability**. In assessing the reasonableness of demurrage practices and regulations, the Commission may consider whether and how regulated entities provide notice to cargo interests that cargo is available for retrieval. The Commission may consider the type of notice, to whom notice is provided, the format of notice, method of distribution of notice, the timing of notice, and the effect of the notice.

**(iv) Government inspections**. In assessing the reasonableness of demurrage and detention practices in the context of government inspections, the Commission may

22

consider the extent to which demurrage and detention are serving their intended purposes and may also consider any extenuating circumstances.

(d) **Demurrage and detention policies**. The Commission may consider in the reasonableness analysis the existence, accessibility, content, and clarity of policies implementing demurrage and detention practices and regulations, including dispute resolution policies and practices and regulations regarding demurrage and detention billing. In assessing dispute resolution policies, the Commission may further consider the extent to which they contain information about points of contact, timeframes, and corroboration requirements.

(e) **Transparent terminology**. The Commission may consider in the reasonableness analysis the extent to which regulated entities have clearly defined the terms used in demurrage and detention practices and regulations, the accessibility of definitions, and the extent to which the definitions differ from how the terms are used in other contexts.

(f) **Non-Preclusion**. Nothing in this rule precludes the Commission from considering factors, arguments, and evidence in addition to those specifically listed in this rule.