# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 20, 2023          Decided July 5, 2024

No. 23-1052

EVERGREEN SHIPPING AGENCY (AMERICA) CORP. AND
EVERGREEN LINE JOINT SERVICE AGREEMENT,
PETITIONERS

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF
AMERICA,
RESPONDENTS

On Petition for Review of an Order
of the Federal Maritime Commission

*Robert K. Magovern* argued the cause and filed the briefs for petitioners.

*Catherine E. Stetson* and *Sean Marotta* were on the brief for *amici curiae* World Shipping Council, et al. in support of petitioners.

*Phillip "Chris" Hughey*, General Counsel, Federal Maritime Commission, argued the cause for respondents. With him on the brief were *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, U.S. Department of Justice, and *Paul A.*

2

*Schofield* and *Kathryn C. Buettner*, Attorney-Advisors, Federal Maritime Commission.

Before: HENDERSON and GARCIA, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* Ginsburg.

Ginsburg, *Senior Circuit Judge*: Under the Shipping Act of 1984, an ocean carrier must "establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property." 46 U.S.C. § 41102(c). One regulated practice is the assessment of detention charges — fees charged by an ocean carrier for the use of a shipping container outside a marine terminal. The Federal Maritime Commission, which enforces the Act, has promulgated an interpretive rule intended to clarify how the Commission assesses the reasonableness of a detention charge. 46 C.F.R. § 545.5. Applying that rule, the FMC held the detention charges that Evergreen Shipping Agency (America) Corp. and its affiliates collected from TCW, Inc., a trucking company, for the late return of a container were "unjust and unreasonable" insofar as the charges were for days when the relevant port was closed and could not have accepted a returned container.

Evergreen petitioned this court for review, arguing the Commission's application of the interpretive rule is arbitrary and capricious, in violation of the Administrative Procedure Act. Because the Commission failed to respond reasonably to Evergreen's arguments, and adequately to analyze the incentive effect of the detention charges at issue here, we grant the petition, vacate the Commission's order, and remand this matter to the agency for further proceedings.

3

## I. Factual and Legal Background

This case arises from the Federal Maritime Commission's application of its "incentive principle" to hold Evergreen's late fees did not provide an economic incentive for prompt return of a container. We begin with some background.

### A. The Shipping Industry

Undergirding the shipping industry is a system for borrowing and returning equipment, particularly shipping containers and the chassis on which they are moved. For the trade route between Asia and North America, some containers must be shipped back to Asia empty because more goods are shipped to than from North America. The efficiency of the system, which the FMC terms its "freight fluidity," depends upon prompt return to port of borrowed equipment for its shipment back to Asia. *See, e.g.*, *Impacts of Shipping Container Shortages, Delays, and Increased Demand on the North American Supply Chain: Hearing Before the Subcomm. on Coast Guard & Maritime Transport of the H. Comm. on Transp. & Infrastructure*, 117 Cong. 39 (2021) (written statement of John W. Butler, President & CEO, World Shipping Council).

Any breakdown in the operation of this cycle can have costly ripple effects. When a carrier borrows a container and does not promptly return it, the lender has one fewer container to use or to lease out. If the number of unreturned containers builds up over time, then there will be a shortage in the supply of containers available to pick up shipments. In the Commission's own words, "congestion begets further congestion, which in turn may result in higher costs for everyone in the supply chain." Federal Maritime Commission, Report: Rules, Rates, and Practices Relating to Detention, Demurrage,

4

and Free Time for Containerized Imports and Exports Moving Through Selected United States Ports, at 21 (2015).[*]

### B. Detention Charges Under the Shipping Act

In order to encourage the timely return of equipment, ocean carriers impose "detention" charges, defined by the Commission as "any charges, including 'per diem,' assessed by ocean common carriers . . . related to the use of . . . shipping containers, not including freight charges." 46 C.F.R. § 545.5(b). The practice in the shipping industry is that the party responsible for retrieving a loaded container from a port and delivering its cargo to the addressee is allotted a certain number of days to return the empty container and any related equipment before detention charges begin to accrue. The amount of this so-called "free time" is either set forth in the ocean carrier's "tariff" of published terms and conditions for transportation or established by contract. Per diem detention charges provide an incentive for the timely return of equipment and compensate the ocean carrier for the opportunity cost of its late return.

The Shipping Act leaves to the Commission the determination whether a detention charge is "just and reasonable." *See* 46 U.S.C. § 41102(c); *see also* 46 C.F.R. § 545.4. In 2016, a group of trade associations representing a broad array of interests in the shipping industry petitioned the FMC for a rule "to clarify what constitutes 'just and reasonable rules and practices' with respect to the assessment of demurrage, detention, and per diem charges . . . when ports are congested or otherwise inaccessible." Petition of the Coalition for Fair Port Practices

---

[*] Demurrage refers to the charge the merchant pays for the use of the space a container occupies at the port when the merchant delays in picking it up after the expiration of its free time. *Id.* at 12 & n.8.

5

for Rulemaking; Notice of Filing and Request for Comments, 81 Fed. Reg. 95612, 95612. In response, the Commission opened a fact-finding investigation, published a report, and issued a Notice of Proposed Rule Making for the Interpretive Rule on Demurrage and Detention Under the Shipping Act. 84 Fed. Reg. 48850, 48850–56 (2019) (to be codified at 46 C.F.R. § 545). The Commission adopted the final rule in 2020. *See* 85 Fed. Reg. 29638, 29665–66 (publishing 46 C.F.R. § 545.5).

The aspect of the interpretive rule at issue here is the "incentive principle," which provides the "reasonableness" of detention charges will be judged by "the extent to which . . . [they] are serving their intended primary purposes as financial incentives to promote freight fluidity." § 545.5(c)(1). The interpretive rule also specifies that, "[a]bsent extenuating circumstances, practices and regulations that provide for imposition of detention when it does not serve its incentivizing purposes, such as when empty containers cannot be returned, are likely to be found unreasonable." § 545.5(c)(2)(ii). At the same time, however, the FMC acknowledged that the rule, being interpretative, did not create any new "requirements," "mandates," or "dictates"; on the contrary, it specifically rejected some commenters' requests for a "bright line rule." 85 Fed. Reg. at 29642, 29654 (explanation accompanying the final interpretive rule).

### C. Evergreen's Detention Charges

This case involves the application of the interpretive rule to the detention charges for which Evergreen invoiced TCW, Inc. for the late return of a container and vehicle chassis. Yamaha Motor Company, Ltd., the shipper, had entered into an agreement for Evergreen to transport motorcycles from the Port of Shimizu, Japan to its warehouse in Newnan, Georgia, via the Port of Savannah. Evergreen handled the ocean portion of the

6

journey; for ground transportation (from the Port of Savannah to Newnan), Yamaha designated TCW as its "Preferred Trucker." Under the governing contract, TCW had 21 days of free time for Evergreen's container and four days of free time for its chassis; thereafter, detention charges of $150 and $20 would accrue for the container and the chassis respectively every calendar day, including weekends and holidays.

TCW picked up the container and chassis from the port on April 28, 2020. Due to a COVID-related closure at the Yamaha warehouse in Newnan, TCW did not return the chassis and container to the port until May 26, which was seven days late[†] for the container and 22 days late for the chassis.

Evergreen invoiced TCW $1,490 in detention charges. TCW objected to the $510 charged for May 23–25, when TCW was unable to return the equipment because the Port of Savannah was closed. Evergreen refused to waive the charges.

TCW paid the invoice in full and then filed a complaint against Evergreen with the FMC small claims program. TCW argued the $510 charge was unjust and unreasonable because it could not have returned an empty container when the port was closed and therefore the charge could not have been a "motivating factor for increasing cargo fluidity." The small claims officer issued an initial decision in favor of TCW. The Commission then sua sponte gave notice that it intended to review that decision, saying it was "particularly interested in arguments regarding application of the interpretive rule on demurrage and detention."

---

[†] Because the four days of free time for the chassis would have expired on a weekend, per the governing contract, free time for the chassis did not expire until the following Monday, May 4 (six days after TCW took possession).

7

### D. The Commission's Order

In December 2022, the Commission issued its Order Affirming the Initial Decision, over a dissent by Commissioner Bentzel. *TCW, Inc. v. Evergreen Shipping Agency (Am.) Corp.*, No. 1966(I), 2022 WL 18068977 (Dec. 29, 2022). Regarding the propriety of Evergreen's assessed detention charges, the FMC underscored that "during the rulemaking the Commission was clear that no amount of detention can incentivize the return of a container when the terminal cannot accept the container." *Id.* at *5. The FMC also rejected the argument that failing to impose detention charges during the May 23–25 port closure "would have disincentivized the return of the container before the closure," noting that "[t]hese arguments were previously raised and similarly dismissed during the rulemaking process" and that the "disincentivizing argument neglects the commercial incentives to returning empty containers." *Id.* at *6. Without explaining what those commercial incentives might be, the FMC then dismissed Evergreen's argument that TCW "could have returned the container prior to May 23–25." *Id.*

Dissenting Commissioner Bentzel reasoned that the "incentive principle" in the interpretive rule did not displace the "reasonableness" standard in the Shipping Act. *Id.* at *10. In his view, the Commission was "at risk of overstating the manufactured [incentive] principle at the peril of usurping reasonableness." *Id.* at *11. He thought the Commission was "overly concerned with the methodology of assessing detention" charges rather than asking whether the charges "reasonably achieved the objective of providing fluidity of movement of cargo." *Id.*

In any event, Commissioner Bentzel would have held Evergreen's detention charges were consistent with the incen-

8

tive principle: TCW had notice of the weekend closure before it picked up the container bound for Newnan; it had "a reasonable amount of time" in which to return the equipment; and "there were no issues that were beyond or outside of the control of [TCW] justifying the denial of detention penalties." *Id.* at *11–12. "In essence, [TCW] knew when the [Port] was closed and failed to timely re-deliver [Evergreen's equipment] before the stipulated time." *Id.* at *11.

## II. Analysis

Our review under the "arbitrary and capricious" standard is deferential, 5 U.S.C. § 706(2)(A), but we nonetheless require the Commission to articulate "a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). An agency action is arbitrary and capricious if the agency has:

> entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.*

Evergreen faults the FMC's Order on all fronts: It argues the Commission failed to consider relevant factors owing to its myopic focus on the incentive principle, did not give a reasoned explanation for several aspects of its decision, and applied the incentive principle in defiance of common sense to reach an illogical result. We agree. Indeed, the FMC's failure to respond in any meaningful way to most of Evergreen's ar-

9

guments is itself arbitrary and capricious. *See PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005).

**A. Failure to Consider Relevant Facts**

Evergreen argues the Commission failed to take account of "several critical facts and extenuating circumstances" in determining whether the detention charges for May 23–25 were just and reasonable, including: (1) Evergreen's allotment of 21 days of free time for the container and four days of free time for the chassis, which TCW does not claim was unreasonable; (2) TCW's contractual obligation to pay detention charges after the expiration of free time; (3) the Port of Savannah had announced, before TCW took the container, the days on which it would be closed; and (4) free time on both the chassis and container had expired before the May 23–25 closures.

Although the Commission acknowledged these points in passing, *TCW, Inc.*, 2022 WL 18068977 at *5–6, it did not explain why they either were not relevant to whether the detention charges were just and reasonable or were outweighed by countervailing considerations. Instead, the Commission merely noted that "[t]hese arguments were previously raised and similarly dismissed during the rulemaking process," and that "during the rulemaking the Commission was clear that no amount of detention can incentivize the return of a container when the terminal cannot accept the container." *Id.*

In effect, the Commission treated the incentive principle as just the sort of "bright line" rule it had denied creating when adopting the rule. Yet, as the Commission itself noted when it published the rule, and as Commissioner Bentzel explained in his dissent, an interpretive rule does not create any legal obligations; "terms such as 'incentive principle' do not replace

10

'reasonableness' which is the underpinning of the Shipping Act." *Id.* at *10; 85 Fed. Reg. at 29642.

Accordingly, the Commission, in adopting the interpretive rule, had said it "would consider any additional or countervailing arguments or evidence raised by the parties in a particular case," and that each "case would continue to be decided on [its] particular facts." 85 Fed. Reg. at 29641. The interpretive rule reflects this commitment by expressly opening the door to unanticipated circumstances, such as those Evergreen presented in this case: "Nothing in this rule precludes the Commission from considering factors, arguments, and evidence in addition to those specifically listed in this rule." 46 C.F.R. § 545.5(f); *see also id.* § 545.5(c)(2)(ii) (noting that "extenuating circumstances" would be considered). In fact, the Commission explained in the rule that detention fees may be unreasonable in certain situations, including "uncommunicated or untimely communicated notice of terminal closures," 85 Fed. Reg. at 29655, which suggests that whether the Port of Savannah had communicated its closure to TCW is relevant to the reasonableness of the fees. It was arbitrary and capricious for the FMC to commit to making a circumstantial, fact-bound inquiry in the interpretive rule and then, when it came time to apply the rule, to jettison all but its favorite factor.

**B. Illogical Application of the Incentive Principle**

For those of Evergreen's arguments to which the FMC did respond, its reasoning is, charitably put, implausible. Bright line rule or not, the Commission errs insofar as it maintains a detention charge necessarily lacks any incentivizing effect because it is levied for a day on which a container cannot be returned to a marine terminal. On the contrary, being charged for detention during a port closing announced before the carrier

11

picks up the equipment heightens the incentive to return equipment on time.

The illogic of the FMC's position is illustrated by the very reason it offered in its support, to wit, the need to "consider the broader context of freight fluidity throughout the supply chain — such as potential logjams if there is a rush to get equipment in before a weekend closure." Br. of Resp't 16. If the Commission is right that there is no incentivizing effect from charging detention fees on a weekend when a port is closed, then why would there be a logjam to avoid the detention charge? This logical inconsistency alone renders the Commission's Order arbitrary and capricious. *See Am. Fed'n of Gov't Emps. v. FLRA*, 470 F.3d 375, 380 (D.C. Cir. 2006) ("Certainly, if the result reached is illogical on its own terms, the [agency's] order is arbitrary and capricious." (cleaned up)).

Under the APA, the Commission cannot rest upon a bare assertion that a detention charge assessed for a day when a port is closed has no incentivizing effect. It must, at a minimum, provide a logical explanation for its view. Perhaps it can do so on remand, but so far it has done the very opposite.

### III. Conclusion

For the foregoing reasons, we grant the petition for review, vacate the Commission's order, and remand this matter to the agency for further proceedings.

*So ordered.*